**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3394
_____

ROBERT WELLMAN, JR.,
                              Appellant

v.

BUTLER AREA SCHOOL DISTRICT,
DR. JOHN WYLLIE, Individually, and in his
capacity as principal of the Butler Area High School
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-13-cv-00616)
District Judge: Hon. Mark R. Hornak
_____

Argued: November 7, 2017
_____

Before: SMITH, Chief Judge, JORDAN and SHWARTZ,
Circuit Judges.

(Filed: December 12, 2017)

_____

OPINION OF THE COURT
_____


Edward A. Olds, Esq.        [ARGUED]
Olds Russ & Associates
1007 Mount Royal Boulevard
Pittsburgh, PA 15223

        Counsel for Appellants


Thomas E. Breth, Esq.        [ARGUED]
Dillon McCandless King Coulter & Graham
128 West Cunningham Street
Butler, PA 16001

        Counsel for Appellees

SHWARTZ, Circuit Judge.

        Robert Wellman, Jr., appeals the District Court's order dismissing his complaint without prejudice for lack of subject matter jurisdiction because he failed to exhaust his administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. He contends that the Court erred because none of his claims seek relief under the IDEA and, in any event, exhaustion would be futile.

The outcome of this appeal is largely dictated by the Supreme Court's recent opinion in Fry v. Napoleon Community Schools, 137 S. Ct. 743 (2017), which requires that we consider the "crux"—the "gravamen"—of the complaint to determine whether a plaintiff seeks relief for "denial of the IDEA's core guarantee [of] . . . a free and appropriate education [FAPE,]" id. at 748 (quotation marks omitted); if so, then the plaintiff must exhaust his administrative remedies under the IDEA. Because the gravamen of each count in Wellman's complaint seeks relief for the denial of a FAPE, Wellman would typically be required to exhaust his claims. Wellman concedes, however, that he released all claims seeking relief based on the denial of a FAPE, and thus, he has no claims to exhaust. As a result, we will vacate the District Court's order dismissing the complaint without prejudice and remand with instructions to dismiss the complaint with prejudice.

I[1]

Wellman attended high school in the Butler Area School District ("the School District"). He suffered a head injury while playing flag football in his freshman physical education class. After school that day, Wellman attended football practice, where he suffered additional head injuries. The following day, Wellman saw his doctor and later underwent a CT scan, which revealed that he had sustained a concussion. Wellman suffered "pain" and experienced "staring spells, trouble sleeping, and difficulty concentrating." App. 126.

Wellman returned to school, but his mother asked the school to assist him until his concussion healed. Wellman's mother requested that Wellman be taken out of his German and physical education classes, that he be given extra study halls, and that the football coach not allow him to engage in any unsuitable physical activity. Rather than allow him to rest during his extra study halls, however, the teachers required him to take make-up exams. Wellman alleges that the school's indifference to his need for accommodations increased his stress and aggravated his cognitive problems.

---

[1] The facts are taken from the Second Amended Complaint. Because this appeal involves a facial challenge to the existence of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), we accept as true the facts alleged in the complaint and construe them in favor of the nonmoving party. Constitution Party of Pa. v. Acihele, 757 F.3d 347, 357 n.12 (3d Cir. 2014).

After performing an EEG test, Wellman's doctor wrote a letter asking the school to provide Wellman with academic accommodations, specifically tutors and more time to complete his assignments. The school ignored these requests.

A few weeks later, Wellman attended a high school football game. Before the game, Wellman's mother told the football coach that Wellman had a concussion, was not cleared to participate in the game, and should not be exposed to any possibility of physical contact. Despite this conversation, the football coach asked Wellman to hold one of the markers on the sidelines. Wellman was not wearing any protective gear. During the game, a player in full uniform ran into Wellman and knocked him over, causing another head injury.

After this incident, Wellman's concussion symptoms worsened, and he experienced severe headaches, problems focusing, and exhaustion. A CT scan revealed that he had post-concussive syndrome. Wellman began to miss school because of his symptoms and medical appointments, and when he was able to attend school, his teachers refused to provide accommodations for him. As a result, Wellman suffered significant stress, embarrassment, and anxiety.

Wellman and his mother met with the principal regarding his teachers' failure to accommodate him,[2] but the principal was dismissive of his problems. Because the School District would not accommodate him, Wellman requested and received homebound instruction but claimed that the teachers

[2] The Complaint states that Wellman's teachers ignored his doctor's request for accommodations and were "giving Wellman too much work." App. 131.

who provided the instruction were generally apathetic. Wellman attempted to return to school, but again his teachers denied his requests for accommodations,[3] and he quickly returned to homebound instruction for the remainder of the 2009-10 academic year.

Wellman attempted to return to school for the 2010-11 academic year but was overwhelmed by severe anxiety. To reduce his anxiety, Wellman and his mother asked that he be allowed to switch his lunch period so that he could eat lunch with his friends, but the request was denied. Wellman had panic attacks at the thought of returning to school, and he returned to homebound instruction.

In October 2010, Wellman's mother requested that he be evaluated for an Individualized Education Plan ("IEP").[4] The school determined that Wellman was not eligible for an IEP. However, Wellman underwent an independent evaluation, which concluded that he met the criteria for anxiety

---

[3] It is not clear from the complaint which accommodations were requested and denied during this time period.

[4] The state administers a FAPE by developing an IEP for every child with disabilities. 20 U.S.C. § 1414(d). Once a child is identified as having special needs, "[a] school district provides a FAPE by designing and implementing an individualized instructional program set forth in an [IEP], which must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 607 (3d Cir. 2015) (citations and internal quotation marks omitted).

disorder and cognitive disorder due to a medical condition. Thereafter, Wellman's mother, his therapists, and school officials met. The school proposed a "Chapter 15/504 plan"[5] to help Wellman return to school, but the parties could not reach an agreement on its implementation. App. 134. Four months later, they met again to discuss a Chapter 15/504 plan, but school officials appeared uninterested in giving Wellman "any sort of accommodations." Id. Wellman finished his sophomore year in cyber school. The following year, he enrolled in private school, from which he eventually graduated.

Wellman and his parents filed a due process complaint with the Pennsylvania Department of Education against the School District, requesting a hearing, an IEP, compensatory

---

[5] Chapter 15 of the Pennsylvania Code implements the statutory and regulatory requirements of § 504 of the Rehabilitation Act, 29 U.S.C. § 794, 22 Pa. Code § 15.1(a). Section 504 requires schools to provide "a free appropriate public education," defined in the Rehabilitation Act as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of [students with disabilities] as adequately as the needs of [nondisabled students] are met and (ii) are based upon adherence to procedures that satisfy the requirements of § 104.34 [least restrictive setting], § 104.35 [evaluation and placement], and § 104.36 [procedural safeguards]." 34 C.F.R. § 104.33(b)(1). "Section 504 defines disability more broadly than the IDEA, and thus, some students covered by Section 504 are not covered under the IDEA." Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 269 n.4 (3d Cir. 2014) (citations omitted).

education for two years, and payment of Wellman's private school tuition. Wellman and the School District eventually entered into a Settlement and Release Agreement ("the Settlement Agreement") with respect to the claims in the due process case. Under the Settlement Agreement, the Wellmans released the School District and its employees

> from all rights, claims, causes of action, and damages of any nature including, but not limited to, any claim for legal fees and/or costs, which were pursued in the above-referenced case or which could have been pursued in the above-referenced case, pursuant to the [IDEA], as amended; the Americans with Disabilities Act (ADA); or any other Federal or State statute, including the regulations promulgated thereunder.

App. 101.

Wellman thereafter filed suit in the United States District Court for the Western District of Pennsylvania against the School District and the high school's principal. In the operative complaint, Wellman alleges that the School District and principal: (1) violated the Rehabilitation Act, 29 U.S.C. § 794, and the ADA, 42 U.S.C. § 12132, by refusing to accommodate Wellman and treating him as if his injuries were fabricated or exaggerated; (2) violated the Rehabilitation Act and ADA by insisting that Wellman hold the marker on the football field, even though the School District was aware that he had a concussion and should not have been exposed to unnecessary physical risk; and (3) sought relief under 42 U.S.C. § 1983 for a violation of Wellman's equal protection

8

rights by failing to accommodate him, retaliating against him because he requested accommodations, and treating him differently from other disabled students.

The School District and principal filed a motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The District Court initially dismissed the claim against the principal in his official capacity but allowed all other claims to proceed. After this Court decided Batchelor v. Rose Tree Media School District, 759 F.3d 266 (3d Cir. 2014), which held that exhaustion under the IDEA was a jurisdictional requirement, the District Court concluded that it lacked subject matter jurisdiction and dismissed the Complaint without prejudice, because (1) each of Wellman's claims were related to the provision of a FAPE, and he failed to exhaust his claims before a special education hearing officer; (2) the Settlement Agreement did not render the claims exhausted because it did not serve the key purpose of developing an underlying factual record; and (3) no exception to exhaustion was applicable to the case, given that no underlying factual record was developed, there were no allegations of an emergency situation requiring immediate resolution, and Wellman's claims all principally related to his education. Wellman appeals.

II

We first address whether we have appellate jurisdiction over the challenged order. The District Court's order dismissed the complaint without prejudice for failing to exhaust administrative remedies. Wellman contends that exhaustion would be futile, and so he has chosen not to present the claims in his complaint to an administrative hearing officer.

9

"[A]n appellant who does not attempt to avail himself of the administrative process, but who instead files an appeal raising the argument that exhaustion would be futile, 'effectively stands on his original complaint' and that in such cases we may exercise jurisdiction over an order dismissing a complaint without prejudice." Ghana v. Holland, 226 F.3d 175, 180–81 (3d Cir. 2000) (quoting Nyhuis v. Reno, 204 F.3d 65, 68 n.2 (3d Cir. 2000)).

Wellman has filed an appeal and argued that administrative exhaustion would be futile, and thus, he has effectively decided to stand on his complaint. We will therefore treat the order dismissing the complaint without prejudice as a final order and exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. See Booth v. Churner, 206 F.3d 289, 293 n.3 (3d Cir. 2000) ("[A] plaintiff can appeal from a dismissal without prejudice when he declares his intention to stand on his complaint or when he cannot cure the defect in his complaint."), aff'd, 532 U.S. 731 (2001).

### III

We next address whether we have subject matter jurisdiction. Wellman invoked federal question jurisdiction pursuant to 28 U.S.C. § 1331 by raising claims under several federal statutes. The School District contends that the federal court lacks subject matter jurisdiction over the complaint because Wellman's claims seek relief under the IDEA and 20 U.S.C. § 1415(l) requires such claims be presented to an administrative hearing officer, which Wellman failed to do. In Batchelor, this Court held that exhaustion of the IDEA administrative process is normally required for a District Court to exercise subject matter jurisdiction. 759 F.3d at 272 (citing

10

Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)). While we have some doubts as to whether IDEA exhaustion is a jurisdictional requirement,[6] we are bound by this precedent. Moreover, we need not wrestle with whether exhaustion is jurisdictional because the School

_____

[6] There appears to be some tension in our precedent as to whether a jurisdictional exhaustion requirement could be subject to a futility exception. Compare Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007) (discussing the difference between "prudential exhaustion" and "jurisdictional exhaustion," and explaining that a prudential exhaustion requirement can be bypassed under certain circumstances, including futility, but that a jurisdictional exhaustion requirement "is a prerequisite to a court's subject matter jurisdiction. Regardless of whether there is a compelling reason a plaintiff failed to exhaust, a court is without subject matter jurisdiction to hear the plaintiff's claim"), and Nyhuis v. Reno, 204 F.3d 65, 69 (3d Cir. 2000) (noting that a jurisdictional exhaustion requirement "by definition cannot be subject to a futility exception" (emphasis in original)), with D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 274-75 (3d Cir. 2014) (noting that exhaustion is a prerequisite to a district court's subject matter jurisdiction, but stating that there are four exceptions to the exhaustion requirement, including futility, and explaining that "[a]bsent the existence of any of those exceptions, failure to exhaust will deprive a federal court of subject matter jurisdiction"). Here, the exhaustion requirement can be excused, for example, if it is futile or if there are emergent circumstances that justify coming directly to federal court. The fact that the exhaustion requirement has exceptions suggests that it is not a jurisdictional prerequisite to our authority to hear an IDEA case.

11

District insists exhaustion is required for Wellman to proceed. We must therefore address the School District's contention that exhaustion is required, regardless of whether it is a prerequisite for us to exercise subject matter jurisdiction. See, e.g., J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 593 n.2 (8th Cir. 2013) ("Because the District has not waived the exhaustion argument and we conclude the Plaintiffs were required to exhaust their administrative remedies, we need not reach this issue."); Muskrat v. Deer Creek Pub. Sch., 715 F.3d 775, 783 (10th Cir. 2013) ("Ultimately, however, for purposes of this case[,] IDEA exhaustion's status as a jurisdictional prerequisite is not at issue. Had defendants failed to raise IDEA exhaustion below or failed to renew that question here, then our obligation to do so independently would turn on its jurisdictional or nonjurisdictional nature." (citation omitted)). Thus, we will next examine whether Wellman's claims are subject to § 1415(l)'s exhaustion requirement.

IV

The IDEA requires participating states to provide disabled children with a FAPE, 20 U.S.C. § 1412(a)(1)(A), and sets forth an administrative mechanism for resolving disputes concerning whether a school has complied, id. § 1415. The IDEA provides for an impartial due process hearing conducted by the state or local educational agency, id. § 1415(f), and the right to appeal the results to the state educational agency if the due process hearing was conducted by the local educational agency, id. §1415(g). The IDEA also requires parties to use these procedures whenever they seek relief "available under this subchapter" even if they are pursuing relief under other federal laws. Id. § 1415 (l). Specifically, the IDEA provides that:

12

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

Id. § 1415(l). Thus, a plaintiff who seeks relief available under the IDEA must exhaust his administrative remedies before filing a lawsuit, even if he relies on laws other than the IDEA.

Courts of Appeals have disagreed about how this provision applied to non-IDEA claims, such as claims under the ADA, Rehabilitation Act, and § 1983. The Supreme Court weighed in on this issue in Fry v. Napoleon Community Schools. In Fry, the plaintiffs alleged that their daughter's school district discriminated against her in violation of the ADA, the Rehabilitation Act, and state law when it barred her from bringing her service dog to school to assist her with mobility and balance problems. 137 S. Ct. at 750-52. The Court of Appeals for the Sixth Circuit held that Fry was required to exhaust her IDEA remedies, even though she filed non-IDEA claims. Id. at 752. The Supreme Court reversed, holding that "exhaustion is not necessary when the gravamen

13

of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" Id. at 748 (quoting 20 U.S.C. § 1412(a)(1)(A)). In reaching this conclusion, the Court noted that the IDEA requires exhaustion only where the plaintiff "'seek[s] relief that is also available' under the IDEA." Id. at 752 (quoting 20 U.S.C. § 1415(l)). "[T]o meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" Id. The Court explained that "in determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." Id.[7]

In determining whether the gravamen of a plaintiff's complaint is the denial of a FAPE, the Court directed courts to consider one "clue" in the form of two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library? And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" Id. at 756 (emphasis in original). The Court explained that if the

---

[7] The Court declined to decide whether exhaustion would be required if a plaintiff complained of the denial of a FAPE but sought remedies which were not available under the IDEA (e.g., money damages). Fry, 137 S. Ct. at 752 n.4. Under our precedent, however, a plaintiff's request for remedies not available under the IDEA does not remove the claim from being subject to exhaustion. Batchelor, 759 F.3d at 276-78. Thus, Wellman's request for damages unavailable under the IDEA or in the administrative forum does not exempt his claims from the exhaustion requirement.

14

answer to both of these questions is yes, then it is unlikely that the complaint is about the denial of a FAPE. Id. By contrast, when the answer to both of these questions is no, then the complaint probably concerns a FAPE. Id.

In addition to these two questions, the Court identified one additional consideration:

> A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute . . . . A plaintiff's initial choice to pursue that process may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy. Whether that is so depends on the facts . . . . [b]ut prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term.

Id. at 757.

Thus, under Fry, we must focus on the "gravamen of the plaintiff's suit." Fry, 137 S. Ct. at 748; see also id. at 752 ("[A] court should look to the substance, or gravamen, of the plaintiff's complaint."); id. at 755 ("What matters is the crux—or, in legal speak, the gravamen—of the plaintiff's complaint .

15

. . .").  Black's Law Dictionary defines gravamen as "[t]he substantial point or essence of a claim, grievance, or complaint."  Black's Law Dictionary (10th ed. 2014). Although the Supreme Court's language spoke in terms of the "complaint," which could mean that the Court was not endorsing a claim-by-claim approach, this is not how we understand the opinion.  The word "gravamen" bespeaks concern with both individual claims as well as the collection of claims called a complaint.  See id.  To apply the Fry test without consideration of the actual claims could result in situations where claims that are included in a complaint because they involve the same parties or course of events but do not involve the provision of a FAPE get swept up and forced into administrative proceedings with claims that are seeking redress for a school's failure to provide a FAPE.  Although these administrative proceedings ensure that FAPE claims are first reviewed by agencies with the appropriate subject matter expertise, these agencies do not employ similar expertise when it comes to claims that do not involve the provision of a FAPE. For example, if a student who was challenging the sufficiency of her IEP also happened to be physically assaulted on the bus going to school, one could envision the plaintiff bringing a single complaint with different claims arising from her school experience, one of which seeks relief for physical injuries sustained while on the school bus and which has nothing to do with her access to a FAPE and IDEA relief.  Surely the Court would not have envisioned that such a claim would be subject to the IDEA's procedural requirements, nor would subjecting such a claim to these procedural requirements necessarily result in any benefit to either the parties or court reviewing the matter at a later date.  Put differently, claims related to the implementation of an IEP involve the provision of a FAPE and are subject to exhaustion, see J.M. v. Francis Howell Sch. Dist.,

16

850 F.3d 944, 951 (8th Cir. 2017) ("[Plaintiff] also claims the administrative process would not have addressed all her claims. This, however, does not excuse exhaustion. Although the administrative process may not address all claims, this court has held [that] exhaustion is not futile because it would allow the agency to develop the record for judicial review and apply its expertise to the plaintiff's claims to the extent those claims are related to implementation of the IEP." (citations and internal quotation marks omitted)), but claims that go beyond the student's educational experience are not, see J.S. III v. Houston Cty. Bd. of Educ., No. 15-14306, 2017 WL 4351313, at *4-5 (11th Cir. Oct. 2, 2017) (isolation of a severely disabled and cognitively impaired student could give rise to a FAPE claim for failing to follow his IEP but isolating him for no educational purpose is a form of discrimination similar to the type that could be brought by an institutionalized adult and thus is cognizable as an ADA claim and not "merely a FAPE violation under the IDEA"). In short, under Fry, a court must review both the entire complaint and each claim to determine if the plaintiff seeks relief for the denial of a FAPE.

Application of the Fry framework to Wellman's entire complaint and each of his claims shows that his grievances all stem from the alleged failure to accommodate his condition and fulfill his educational needs. A review of his detailed factual allegations shows that the conduct about which he complains would not have occurred outside the school setting and that a nonstudent could not (and would not) have "pressed essentially the same grievance." Fry, 137 S. Ct. at 756. Most of the more than thirty paragraphs within the section of the complaint entitled "Statement of Facts" set forth Wellman's requests for specific accommodations to help him achieve the level of learning expected from him, such as removing him

17

from his German and physical education classes, providing him with extra study halls, tutors, and additional time to complete assignments, and conveying to the teachers and football coach that he not engage in any unsuitable activity that might aggravate his symptoms and condition. Wellman alleges that, rather than being provided with these accommodations, he was taken out of study hall so he could take exams, given too much work and denied extra time to complete it, had apathetic homebound instructors, and was not given support to address the impact of his concussive condition on his ability to learn.

These factual allegations are expressly incorporated by reference into each count of the complaint, and each count includes additional allegations. In Count I, which seeks relief under the ADA and Rehabilitation Act, Wellman reiterates the allegation that the school did not make accommodations for his educational and physical activities while at school and he specifically asserts that "[t]he failure to provide accommodations made [his] inability to survive in the school inevitable" and that he was "effectively excluded from school." App. 138, 39. In short, in this count, he complains about the educational experience that he had while in the School District.[8] This is not the sort of claim that would be brought by a nonstudent against a non-school facility. Thus, under Fry,

_____

[8] At oral argument, Plaintiff's counsel essentially acknowledged that Count I concerns the denial of a FAPE. Oral Arg. Recording at 2:00-3:30, Wellman v. Butler Area Sch. Dist., No. 15-3394 (3d Cir. Nov. 7, 2017), available at www2.ca3.uscourts.gov/oralargument/audio/15-3394 WellmanJrv.ButlerAreaSchooletal.mp3.

18

this claim seeks relief under the IDEA and is subject to exhaustion.

Count II is also subject to exhaustion. Count II seeks relief under the ADA and Rehabilitation Act due to the school's alleged failure to ensure that Wellman was not exposed to danger after the initial head injury he sustained during physical education class but was still permitted to participate in school activities. In this regard, the complaint alleges that Wellman's mother asked that Wellman be given the accommodations of not being required to "suit[] up or [be] exposed to danger of playing conditions, but was still allowed to attend the [football] game." App. 140. Thus, football was an extracurricular school activity that Wellman's mother wanted him to experience safely.[9] While there could be a scenario in which these events may not relate to a FAPE, as pleaded, it appears that the failure to ensure that Wellman was not placed in a dangerous situation at an extracurricular activity was offered as another example of how the school failed to accommodate him so that he could benefit from his educational experience. App. 142 (alleging that "[a]s a consequence of the deliberate indifference of the School District to Wellman's need for accommodations, Wellman was exposed to an extremely dangerous situation for a young man trying to recover from a concussion. . . . The [concussion he suffered while on the sidelines was] due to the deliberate indifference of the School District to Wellman's need for accommodations"). Because these factual allegations are

---

[9] His mother also complained about how the school treated students who suffered sports-related injuries and that the players were pressured to ignore their injuries and to participate.

19

intertwined with his complaints about the school's failure to accommodate his educational needs, which include his participation in extracurricular activities, see S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 264 (3d Cir. 2003) (observing that an IEP "must detail those special education services [that] . . . allow the child to progress in both the general curriculum and participate in extracurricular activities . . ." (citing 20 U.S.C. 1414(d)(1)(A)(iii))), and because such allegations could not be brought by a nonstudent or outside the school setting, the claim set forth in Count II seeks relief for failing to provide a FAPE and is subject to exhaustion.

Count III, which alleges a claim under § 1983, also seeks relief for failing to provide a FAPE. It incorporates all of the factual allegations within the complaint and further asserts that the School District's special education department refused to provide Wellman services, and that the school treated him differently because his claim for such services was based upon the concussions he sustained during school activities, which the principal did not view as a disabling condition. Again, his grievance is that he was unable to access educational services, which is something only a student at school can seek. Thus, this is not a claim that could have been brought outside a school setting or by a nonstudent and, as a result, it is a claim that also seeks relief for failing to provide a FAPE and is subject to exhaustion.

In summary, both the entire pleading and each individual count show that Wellman seeks relief because the School District failed to provide him with academic accommodations that would have allowed him to succeed and remain enrolled in the school despite his injury. These

20

allegations concern the denial of a FAPE, see Fry, 137 S. Ct. at 753-54 (explaining that the FAPE requirement entitles a child to "meaningful access to education based on her individual needs" (citation and internal quotation marks omitted)), and foreclose the conclusion that Wellman could have brought the same complaint against another public facility or that an adult at the school could have brought the same complaint.

The history of the proceedings also show that the gravamen of Wellman's suit seeks relief for the denial of a FAPE. As the Fry Court noted, "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." 137 S. Ct. at 757. Here, Wellman's parents filed a due process complaint against the School District requesting a hearing, an IEP, and compensatory education for two years based upon the same conduct alleged in the instant complaint. Under Fry, Wellman's pursuit of administrative remedies is further evidence that his complaint concerns the denial of a FAPE.

Therefore, considering Wellman's complaint, including each count therein, and the history of the proceedings, we conclude that the gravamen of Wellman's complaint is the denial of a FAPE and that the District Court correctly concluded that Wellman's complaint is the type that would ordinarily require administrative exhaustion.

Here, however, Wellman's parents signed a settlement agreement that explicitly released all claims that were or could have been pursued in the due process proceeding pursuant to the IDEA or any other federal or state statute. Wellman

21

concedes that he released all claims within the jurisdiction of the administrative hearing officer. All of his claims for relief were based upon the denial of a FAPE.[10] As a result, since his complaint seeks relief for the denial of a FAPE, and he has conceded that he released all claims related to the denial of a FAPE, he has no claims to present to an administrative hearing officer and thus no claims to exhaust. Wellman therefore has no basis upon which relief can be granted, and so his complaint must be dismissed with prejudice.

---

[10] Even if we did not conclude that all of the claims in his complaint seek relief under the IDEA, the language of the release seems to convey a general release and would have released the claims that did not seek relief for failing to provide a FAPE. The Settlement Agreement states that the Wellmans "release[d], relinquish[ed], and discharge[d] the Butler School District . . . from all causes of action, and damages of any nature, . . . which were pursued in the above-referenced case or which could have been pursued in the above reference case, pursuant to . . . any . . . Federal or State statute . . . ." App. 101. While Wellman could try to argue that he could not have brought a claim for damages under the ADA, Rehabilitation Act, and § 1983 in the administrative case, it is unlikely he would succeed in making such an argument since all of the injuries he claims to have suffered, such as anxiety, severe emotional distress, embarrassment, and mental illness stem from educational deprivations that were or could have been the subject of the administrative proceedings and hence his ability to seek damages for those injuries has been released. And, as stated previously, the fact that he could not recover the compensatory damages he now seeks in this lawsuit as part of the administrative proceedings does not convert his claims into non-IDEA claims. See Batchelor, 759 F.3d at 276-78.

22

V

For the foregoing reasons, we will vacate the District Court's order dismissing the complaint without prejudice and remand with instructions to dismiss the complaint with prejudice.