**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1804
_____

S.D., a minor, by his parents and natural guardians,
A.D. and R.D.; A.D.; R.D.,
Appellants

v.

HADDON HEIGHTS BOARD OF EDUCATION
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. No. 1:14-cv-01880)
District Judge: Honorable Jerome B. Simandle
_____

On Remand from the Supreme Court of the United States

Resubmitted Under Third Circuit LAR 34.1(a) on June 19, 2017

(Originally argued on January 20, 2016)
_____

Before:  JORDAN, HARDIMAN, and GREENAWAY, JR., *Circuit Judges*.

(Opinion Filed: January 31, 2018)

Judith A. Gran, Esq.
Sarah E. Zuba, Esq. **[ARGUED]**
Catherine Merino Reisman, Esq.
Reisman, Carolla & Gran
19 Chestnut Street
Haddonfield, NJ 08033

*Counsel for Appellants*

Joseph F. Betley, Esq.
Capehart Scatchard
8000 Midlantic Drive
Laurel Corporate Center, Suite 300
Mount Laurel, NJ 08054

William S. Donio, Esq. **[ARGUED]**
Cooper Levenson
1125 Atlantic Avenue, 3rd Floor
Atlantic City, NJ 08401

*Counsel for Appellee*

—————————————

OPINION[*]

—————————————

GREENAWAY, JR., *Circuit Judge*.

A.D. and R.D., individually and on behalf of their son S.D. (collectively, "Appellants"), filed suit against Haddon Heights Board of Education ("Appellee"), alleging violations of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a) (2012), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213 (2012), the First and Fourteenth Amendments of the Constitution of the United States pursuant to 42 U.S.C. § 1983, and New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 to -42 (West 2013). The District Court, relying on our opinion in *Batchelor v. Rose Tree Media School District*, 759 F.3d 266 (3d Cir. 2014), dismissed Appellants' claims pursuant to

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because Appellants failed to exhaust the administrative process provided for by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482 (2012). The Supreme Court subsequently decided *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), which clarified that the IDEA exhaustion requirement applies in instances where, although violations of non-IDEA statutes are pled, the essence of the plaintiff's prayer for relief is the denial of a free appropriate public education ("FAPE"). Because Appellants' claims meet that standard, we conclude that their non-IDEA claims must be exhausted under the IDEA and will affirm.

## I. BACKGROUND[1]

### A. The 2012-13 School Year

S.D. suffers from "multiple medical problems including chronic sinusitis with frequent acute exacerbations, allergic rhinitis, and intermittent asthma." Am. Compl., Ex. C at 2. Appellants allege that these medical "impairments [] substantially limit him in . . . the life activity of learning." *Id.* ¶ 12. S.D.'s doctor concluded that these medical problems "make it likely that he will have frequent school absence[s] due to acute [and] underlying chronic illness," and suggested that S.D. "should qualify for [Section] 504 plan modifications for school." *Id.* ¶¶ 25-26; *id.* Ex. C at 2.

---

[1] The following facts are taken from Appellants' Amended Complaint and exhibits. As explained *infra* Part II, we accept Appellants' allegations as true.

During the 2012-13 school year, when S.D. was in ninth grade at Haddon Heights Junior/Senior High School in New Jersey, Appellee developed a student accommodation plan for S.D. pursuant to Section 504 ("Section 504 Plan"). *Id.* ¶ 29; *id.* Ex. A. This initial Section 504 Plan, dated October 25, 2012, provided S.D. with "extra time for assignments, tests, and quizzes" and required Appellants to "communicate" with S.D.'s teachers about "any missed work" and absences. *Id.* ¶¶ 29-30; *id.* Ex. A at 2. Appellants allege that the initial Section 504 Plan "was not properly implemented or effective" because it "did not impose any enforceable obligation on [Appellee] and its teachers" and "did not give S.D. any way to be instructed in and learn the material that he missed while absent." *Id.* ¶¶ 31-32.

After S.D.'s parents met with Appellee and expressed their concerns, Appellee amended S.D.'s Section 504 Plan. The amended Section 504 Plan, dated April 19, 2013: required teachers to send weekly updates about S.D.'s missing assignments and to provide class notes; required S.D. to complete his assignments within two weeks of any absence; allowed teachers to reduce S.D.'s assignments at their discretion; and required S.D. to create a "to do" list, keep folders of complete and incomplete work, and communicate with teachers, the guidance counselor, and the school nurse. *Id.* ¶ 39; *id.* Ex. B.

Appellants allege that these Section 504 Plans failed to "provide a mechanism . . . for S.D. to obtain homebound instruction or other supplemental instruction to enable him to keep up with the curriculum . . . and otherwise enjoy the benefits of the educational program to the same extent as his non-disabled peers." *Id.* ¶ 41. As a result, S.D. had "to teach himself the curriculum and try to identify and understand assignments that had been

4

explained when he was absent." *Id.* ¶ 45. Therefore, according to Appellants, S.D. fell "further and further behind." *Id.*

The attendance policy in effect during the 2012-13 school year prohibited a student from earning credit for a year-long course in which the student had accrued more than fifteen absences, unless the student provided certain documentation to excuse the excess absences, including, inter alia, a "[m]edical note from a physician." *Id.* Ex. D. During the 2012-13 school year, S.D. accrued "over 33 absences[,] . . . most of [which] related to S.D.'s disabilities." *Id.* ¶¶ 48-49. Nevertheless, he passed his courses and earned the requisite number of credits for promotion to the tenth grade. *Id.* ¶ 50.

## B. New Attendance Policy for the 2013-14 School Year

In the summer of 2013, Appellee enacted a new attendance policy for the 2013-14 school year that required students to be retained if they accrued more than 33 absences in a school year—regardless of whether the absences were "excused, approved, [or] unexcused."[2] *Id.* ¶ 53; *id.* Ex. E at 1. Students with more than fifteen unexcused absences were required to attend a "Saturday Credit Reinstatement Program" in order to obtain credit sufficient to pass their courses. *Id.* ¶¶ 55, 60.

---

[2] The Policy reads in full:

> STUDENTS ARE LIMITED TO A TOTAL OF 33 ABSENCES IN A SCHOOL YEAR. THIS INCLUDES <u>ANY</u> ABSENCE (INCLUDING EXCUSED, APPROVED, AND UNEXCUSED). The only exception is home instruction approved by the district. STUDENTS WITH MORE THAN 33 DAYS ABSENT WILL BE RETAINED.

*Id.* ¶ 53.

Appellants allege that Appellee "made a deliberate choice to enact the Policy," despite Appellee's knowledge that it was "substantially likely" that the new attendance policy would harm S.D.'s ability to advance in school, in order to "target" students like S.D. who had frequent excused absences. *Id.* ¶¶ 54-55. Appellants assert that, because the new attendance policy allowed students with unexcused absences to make up credits and progress to the next grade through the Saturday Credit Reinstatement Program, but offered no such mechanism for students with absences excused by, for example, a disability, to make up credits, the policy had an impermissible discriminatory effect. *Id.* ¶¶ 60-62.

## C.    The 2013-14 School Year

Appellee readopted S.D.'s amended Section 504 Plan for the 2013-14 school year without reference to, or accommodation for, the new attendance policy. *Id.* ¶¶ 40, 70. By March 2014, S.D. had accumulated thirty-seven absences due to his disability, all of which were excused by medical notes.[3] *Id.* ¶ 76. In a letter dated March 13, 2014, the principal of S.D.'s school informed S.D.'s parents that S.D. would be retained pursuant to the new attendance policy. *Id.* ¶¶ 73-75. After S.D.'s parents received the principal's letter, they filed a complaint with the United States Department of Education's Office for Civil Rights, but then decided to pursue litigation to try to prevent S.D. from being retained for the 2014-15 school year. *See id.* ¶¶ 83-84. Appellants commenced the instant federal action on

---

[3] S.D. accrued fifty-eight absences during the 2013-14 school year, fifty-six of which were excused by a doctor's note. *Id.* ¶¶ 66-67.

March 25, 2014 by filing a two-count complaint alleging violations of Section 504 and the ADA.

On April 11, 2014, Appellants filed a motion for a preliminary injunction, seeking to enjoin Appellee from retaining S.D. based on his number of absences. On April 15, 2014, Appellee notified S.D.'s parents that it had revised S.D.'s Section 504 Plan to require him to make up absences excused by his disability by attending "Saturday school for credit reinstatement." *Id.* ¶ 85. The new Section 504 Plan also provided for "make-up attendance with homebound instruction for absences related to" S.D.'s disability. *Id.*

Appellants allege that the April 2014 Section 504 Plan was insufficient because it required S.D. to "log[] time in the school building" and failed to "appropriately compensate for instruction S.D. missed for earlier absences." *Id.* ¶¶ 91-92. Appellants assert that the requirement for S.D. to attend the Saturday credit reinstatement program was "punitive rather than educational" because S.D. had to "serve" Saturdays with students who had unexcused absences and the program did not "provide a means of obtaining instruction missed." *Id.* ¶ 94.

In June 2014, the parties reached a settlement agreement that resolved Appellants' motion for a preliminary injunction. S.D.'s parents paid for him to complete a summer driver's education course in order to be promoted to eleventh grade. *Id.* ¶ 96. However, Appellants now allege that this requirement was "punitive and retaliatory" because it "serve[d] no educational purpose." *Id.* ¶ 99.

**D.     Appellants' Amended Complaint and the District Court's Opinion**

In August 2014, the District Court granted Appellants leave to file an amended complaint that alleged six counts of discrimination and retaliation by Appellee based on S.D.'s disability and assertion of his rights under Section 504. The Amended Complaint attached several exhibits, including two letters from S.D.'s doctor, S.D.'s four Section 504 Plans, and the Board's two attendance policies. Appellants sought thirteen forms of relief, including, inter alia, compensatory education and compensatory and punitive damages. *Id.* at 27-28.

Appellee subsequently filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. The District Court concluded that Appellants' claims required compliance with the IDEA's administrative process and dismissed the claims without prejudice for lack of subject matter jurisdiction.[4] *See A.D. v. Haddon Heights Bd. of Educ.*, 90 F. Supp. 3d 326, 341-43 (D.N.J. 2015). Upon dismissing Appellants' federal claims, the District Court declined to exercise supplemental jurisdiction over Appellants' state law claims, and dismissed those as well. *Id.* at 342 n.14.

This timely appeal followed.[5]

## II.    JURISDICTION AND STANDARD OF REVIEW

---

[4] It is undisputed that Appellants have not exhausted the IDEA administrative process.

[5] On May 15, 2017, the Supreme Court of the United States vacated this Court's opinion in *S.D. v. Haddon Heights Board of Education*, 833 F.3d 389 (3d Cir. 2016), and remanded the case for further consideration in light of its opinion in *Fry*. *S.D. v. Haddon Heights Bd. of Educ.*, 137 S. Ct. 2121 (2017) (mem.). The parties, as requested by this Court, submitted supplemental briefing on the implications of *Fry* on this case.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.[6]  We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's order dismissing a complaint for lack of subject matter jurisdiction.  *Batchelor*, 759 F.3d at 271.  We construe Appellee's motion as a facial challenge to the District Court's subject matter jurisdiction, and, therefore, we apply the same standard of review in considering a motion to dismiss under Rule 12(b)(6)—that is, we view the alleged facts in favor of Appellants, the non-moving party.[7]  *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

_____

[6] The issue of subject matter jurisdiction is at the crux of Appellants' claim. We note, as we did in *Wellman v. Butler Area School District*, 877 F.3d 125 (3d Cir. 2017), that, although our precedent has spoken of the exhaustion requirement in terms of jurisdiction, there is reason to doubt it is actually a jurisdictional point. *See id.* at 130 n.6 ("The fact that the exhaustion requirement has exceptions suggests that it is not a jurisdictional prerequisite to our authority to hear an IDEA case.").  Because Appellee contends that exhaustion is required, however, we must address the argument "regardless of whether it is a prerequisite for us to exercise subject matter jurisdiction." *Id.* at 130.

[7] Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual," and the "distinction determines how the pleading must be reviewed." *Aichele*, 757 F.3d at 357. "Facial attacks . . . contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting *Turicentro, S.A. v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002)).  In contrast, a factual challenge "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites," and permits the district court to independently evaluate all the evidence to resolve disputes over jurisdictional facts. *Aichele*, 757 F.3d at 358 (quoting *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008)); *see S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012).  Here, the District Court construed Appellee's motion to dismiss as a factual attack.  Because Appellee neither answered Appellants' Amended Complaint nor offered any factual averments in support of its motion to dismiss, we conclude that the District Court erred. *See Aichele*, 757 F.3d at 358 ("The Commonwealth filed the [jurisdictional] attack before it filed any answer to the Complaint or otherwise presented competing facts.  Its motion [to dismiss] was therefore, by definition, a facial attack.").  However, at oral argument, both parties conceded that any error was harmless.  We agree.  The District Court stated

## III. ANALYSIS

Congress enacted the IDEA to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ."[8] 20 U.S.C. § 1400(d)(1)(A). States receive federal education funding upon complying with several requirements, including making available a FAPE to children with disabilities and ensuring that such children and their parents are provided with due process. *Batchelor*, 759 F.3d at 271-72. If a child's parents believe that a school has not fulfilled its statutory obligations, the IDEA entitles them to file a complaint and obtain an administrative hearing "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); *see also id.* § 1415(f). After exhausting this administrative hearing process, "[a]ny party aggrieved by the findings and decision[s]" made during the hearing may seek judicial review in federal court. *Id.* § 1415(i)(2)(A). "In the normal case, exhausting the IDEA's administrative process is required in order for the statute to 'grant subject matter jurisdiction to the district court.'" *Batchelor*, 759 F.3d at 272 (quoting *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 778 (3d Cir 1994)).

---

that it accepted Appellants' allegations as true for purposes of the motion to dismiss and only considered the Amended Complaint and attached exhibits.

[8] The IDEA defines FAPE to include "special education and related services" that are free, include an "appropriate" education, and are provided in conformity with an individualized education plan ("IEP"). 20 U.S.C. § 1401(9). Under the IDEA, "special education" means "specially designed instruction . . . to meet the unique needs of a child with a disability." *Id.* § 1401(29).

Section 1415(*l*) of the IDEA requires exhaustion of the administrative hearing process not only in actions brought directly under the IDEA, but also "in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Id.* Section 1415(*l*) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that *before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*) (emphasis added). Thus, if "a lawsuit seeks relief for the denial of a free appropriate public education"—which is "the only 'relief' the IDEA makes 'available'"—a "plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA." *Fry*, 137 S. Ct. at 754-55.

The *Fry* Court considered whether a complaint alleging violations of the ADA and Section 504 was subject to the IDEA's exhaustion requirement and how that determination should be made. *See id.* at 752. It explained that "in determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.* The Court offered that the "history of the proceedings," including whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute," and the following questions can offer clues as to whether the "gravamen of a complaint against a school concerns the denial of a FAPE":

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public

11

theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 756-57. This Court has held that *Fry* requires review of "both the entire complaint and each claim to determine if the plaintiff seeks relief for the denial of a FAPE." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 133 (3d Cir. 2017).

Based on the nature of Appellants' allegations, we conclude that their discrimination and retaliation claims are subject to the IDEA exhaustion requirement. Here, Counts I and II of the Amended Complaint assert discrimination claims under Section 504 and the ADA, respectively. Am. Compl. ¶¶ 102-13. The District Court succinctly summarized the relevant allegations as: "whether [Appellee] appropriately identified S.D. as a student with a disability; [] what constitutes a [FAPE] for S.D.; and whether, and to what extent, the various accommodations sufficiently addressed S.D.'s right to a FAPE." *A.D.*, 90 F. Supp. 3d at 341. Importantly, Appellants' discrimination claims arise from educational harm to S.D.; Appellants allege that the Section 504 Plans developed by Appellee were deficient such that S.D. was denied "educational opportunities" and "fell further and further behind" regarding his progress with the curriculum. Am. Compl. ¶¶ 41-46.

We conclude that Appellants' alleged education injuries in Counts I and II of their Amended Complaint comprise a claim that seeks relief under the IDEA, as opposed to the sort of claim that a student could bring against a public facility that was not a school or that

12

a nonstudent could bring for alleged wrongs in a school setting. Central to Appellants' discrimination claims is that Appellee should have provided alternative or supplemental instruction to S.D. *See, e.g.*, Am. Compl. ¶ 41 (Appellee "did not provide . . . homebound instruction or other supplemental instruction" to S.D.); *id.* ¶ 46 (Appellee failed "to offer any alternative instruction to S.D."); *id.* ¶ 56 (referencing homebound instruction); *id.* ¶ 80 (Appellee failed to "offer S.D. any way to recoup the instruction he missed"); *id.* ¶ 92 ("[I]t is critical that arrangements for [S.D.] to make up educational time he has missed focus on the instruction he needs most."). The substance of Appellants' grievance is that Appellee failed to provide instruction tailored to meet S.D.'s special needs resulting from his disability. Their claims therefore concern the denial of a FAPE to S.D. Thus, Appellants' discrimination claims in Counts I and II could have been remedied through the IDEA's administrative process and are subject to exhaustion.

Appellants' retaliation claims in Counts III and IV challenge the appropriateness of Appellee's initial decision to retain S.D. in the tenth grade, its enactment of the revised attendance policy to retain students based on a total number of absences, and its choice of make-up courses to allow S.D. to progress to the eleventh grade. *See id.* ¶¶ 120-23, 129-32. Appellants allege that Appellee's revised attendance policy "prevent[ed] S.D. from making educational progress" and that Appellee took "retaliatory actions" and "adverse actions" against them as a result of "their efforts to vindicate S.D.'s right to a FAPE." *Id.* ¶¶ 9, 119-23, 129-32. These claims also arise from educational harm and challenge the provision of a FAPE to S.D. Applying the framework of *Fry*, the alleged conduct at issue would not have occurred outside the school setting and a nonstudent could not (and would

13

not) have "pressed essentially the same grievance." *Fry*, 137 S. Ct. at 756; *see also Batchelor*, 759 F.3d at 274-75 (finding a "logical path to be drawn from the [a]ppellants' claims of retaliation to [the appellee's] failure to provide, and [the parent's] effort to obtain," a FAPE for her son). Moreover, because the revised attendance policy forms the basis for all the retaliation claims, and because that policy made express exception for "home instruction approved by the district," Am. Compl. ¶ 53; *id.* Ex. E at 1, those claims too "could have been remedied by the IDEA's administrative process," *Batchelor*, 759 F.3d at 273.

Accordingly, Appellants' claims asserted pursuant to the ADA, Section 504, and § 1983 fall within the ambit of the IDEA and, because Appellants have not exhausted the IDEA administrative process, must be dismissed without prejudice.[9]

Appellants offer several arguments against dismissal, none of which is availing.

First, Appellants argue that S.D. is ineligible for IDEA services and therefore relief is not "available" to them under the IDEA. We, however, agree with the District Court that Appellants' allegations about S.D.'s disability and its effect on his education "potentially implicate[] the statutory entitlements of the IDEA." *See A.D.*, 90 F. Supp. 3d at 338. For a student to be eligible for IDEA services, the student must both: (1) have a disability that falls into one or more of the statute's enumerated categories; and (2) because of that disability, need "special education and related services." 20 U.S.C. § 1401(3).

---

[9] Because we conclude that the District Court properly declined to hear Appellants' federal claims, we will affirm the District Court's dismissal of Appellants' state law claims.

14

Asthma is an enumerated disability. 34 C.F.R. § 300.8(c)(9) (2017). The IDEA also requires that asthma or any other health impairment "[a]dversely affect[]" the student's educational performance. *Id.*

Here, Appellants' Amended Complaint alleges that S.D.'s medical problems "impact[] his ability to attend school and to learn," Am. Compl. ¶ 3, and "substantially limit him in major life activities, specifically the life activity of learning," *id.* ¶ 12. Further, as we explained above, Appellants' allegations—in particular Appellants' complaint that S.D. never received supplemental instruction—implicate a potential need for "special education and related services." 20 U.S.C. § 1400(d)(1)(A). Therefore, we cannot conclude at this time that S.D. is ineligible for relief under the IDEA. Despite Appellants' contention, this conclusion is not conjectural where it relies on the allegations in the Amended Complaint and the relief sought is primarily relief that an IDEA hearing officer may award.[10] *See Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 185 (3d Cir. 2009) (acknowledging "compensatory education" and attorneys' fees as appropriate forms of relief under IDEA).

Second, Appellants argue that a FAPE under the ADA and Section 504 differs from the FAPE defined by the IDEA and, therefore, their ADA and Section 504 claims cannot

---

[10] The Supreme Court in *Fry* left open the question of whether exhaustion is required "when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests . . . is not one that an IDEA hearing officer may award." 137 S. Ct. at 752 n.4, 754 n.8. The Amended Complaint here does seek, in addition to the relief listed above, compensatory and punitive damages "for violations of the United States Constitution, federal law, and New Jersey law." Am Compl. 28. This "request for damages unavailable under the IDEA or in the administrative forum," however, "does not exempt [Appellants'] claims from the exhaustion requirement" under this Court's precedent. *Wellman*, 877 F.3d at 131 n.7.

be remedied through the IDEA administrative process. Although the statutes are not identical, we have previously recognized that the IDEA's substantive protections overlap with those of Section 504 and the ADA. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 n.8 (3d Cir. 2012) ("[O]ur finding that the School District did not deny D.K. a FAPE [under the IDEA] is equally dispositive of Plaintiffs' § 504 claim."); *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735-37 (3d Cir. 2009) (stating that "[t]he IDEA and § 504 of the Rehabilitation Act do similar statutory work," reviewing similar provisions of the two statutes, and concluding that the IDEA's statute of limitations applies to plaintiffs' Section 504 claims); *see also* 34 C.F.R. § 104.33(b)(2) (providing that "[i]mplementation of an [IEP under the IDEA] is one means of meeting the standard" for a FAPE under Section 504). Moreover, as we have concluded above, the theory behind Appellants' grievances focuses in large part on Appellee's failure to provide special instruction to meet S.D.'s educational needs arising from his disability, so that their claims relate to the provision of a FAPE as defined by the IDEA.

On this point, Appellants argue that, under *Fry*, the issue is whether they *did* pursue claims under IDEA as opposed to whether they *could have* pursued claims under IDEA. But the Supreme Court's statement that "[i]n effect, § 1415(*l*) treats the plaintiff as 'the master of the claim,'" *Fry*, 137 S. Ct. at 755, does not mean that § 1415(*l*) only applies when the complaint includes an IDEA claim. Such a reading would flout the plain language of the provision, which provides that the filing of a suit under the ADA or Section 504 is also subject to the exhaustion requirement under certain circumstances. *See id.* at 750; *see also Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) ("The IDEA

16

requires administrative exhaustion not just of claims arising under it, but also of Rehabilitation Act claims that overlap with the IDEA."). The *Fry* Court made clear that the plaintiff is the "master of the claim" in that the plaintiff identifies the remedial basis and determines whether she will "seek[] relief for the denial of an appropriate education." *Fry*, 137 S. Ct. at 755.

As explained above, we conclude that Appellants seek such relief here. We emphasize that, in making this determination, exhaustion is required here not merely because the Amended Complaint uses the phrase "free appropriate public education," but rather because "the gravamen of [the] complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed" precisely as redress for denial of a FAPE as defined by IDEA. *Id.* at 755; *see id.* at 754-55 (stating that although "[t]he inquiry . . . does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) [sic] 'FAPE' or 'IEP,'" "[i]f a lawsuit charges [the denial of a FAPE], the plaintiff cannot escape § 1415(*l*) merely by bringing her suit under a statute other than the IDEA").

Third, Appellants contend that the conclusion that S.D.'s educational injuries could be remedied through the IDEA administrative process assumes that Appellee violated its "Child Find" duty imposed by the IDEA. We disagree. "School districts have a continuing obligation under the IDEA and § 504—called 'Child Find'—'to identify and evaluate all students who are reasonably suspected of having a disability under the statutes.'" *D.K.*, 696 F.3d at 249 (emphasis omitted) (quoting *P.P.*, 585 F.3d at 738). We offer no opinion here as to whether Appellee violated its Child Find duty. We simply decline to equate our

17

finding that Appellants' alleged educational harms could be remedied through the IDEA administrative process with a finding that Appellee violated its Child Find duty.

Our decision here does not foreclose future litigation arising from S.D.'s education. *See Batchelor*, 759 F.3d at 278 n.15 ("This is not to say that Appellants will not be entitled to compensatory damages for their retaliation claims *after* they exhaust the IDEA administrative process. . . . Appellants may very well file a complaint containing virtually identical claims as asserted in the Complaint before us today."). We only hold that Appellants must first exhaust their claims through the IDEA administration process. The District Court correctly determined that the Amended Complaint should be dismissed for failure to exhaust administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.