******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Robinson, C. J., and D'Auria, Mullins, Kahn,
Ecker and Vertefeuille, Js.

*Syllabus*

The plaintiffs, four school-age children diagnosed with autism spectrum disorder and enrolled in the Norwalk public school system, and their parents, brought an action seeking damages from the defendant Board of Education of the City of Norwalk and three of its members in connection with the hiring of the defendants S Co. and L, S Co.'s owner, to provide autism related services to certain children in the Norwalk school district. The plaintiffs alleged, inter alia, that, under state law, the negligent hiring and supervision of L by the board and board members proximately caused them to suffer permanent and ongoing injuries and losses. L represented when she was hired that she had received various master's degrees and was a board certified behavior analyst, but the board and three board members never performed a background check or confirmed her credentials. The board and board members filed a motion to dismiss those counts of the complaint asserted against them on the ground that the plaintiffs sought relief for the board's and board members' alleged failure to provide special education services under the Individuals with Disabilities Education Act (20 U.S.C. § 1400 et seq.), thus triggering an administrative exhaustion requirement contained in that act and in the applicable state statutory (§ 10-76a et seq.) scheme that implements the federal act, thereby depriving the trial court of subject matter jurisdiction. The board and board members specifically contended that, although the plaintiffs did not allege a violation of the federal act, they sought relief for the denial of a free appropriate public education under the federal act and that, regardless of whether the complaint alleged a violation of the federal act or some other common-law claim, the federal act and state law (§ 10-76h) mandated the exhaustion of administrative remedies insofar as the crux of the complaint was the alleged denial of a free appropriate public education. The board and board members alleged, in the alternative, that they were entitled to sovereign immunity because they were acting as agents of the state in providing special education services. The trial court granted the motion to dismiss and rendered judgment for the board and board members, concluding that the plaintiffs were required to exhaust their administrative remedies but had failed to do so. The court denied the motion as to the claim that the plaintiffs' action was barred by sovereign immunity. On appeal, the plaintiffs claimed, inter alia, that they were not required to exhaust their administrative remedies because they did not seek relief for the denial of a free appropriate public education but, rather, asserted common-law claims under state law that were not subject to the exhaustion requirements. *Held*:

1. The trial court incorrectly concluded that the plaintiffs were required to exhaust their administrative remedies, the plaintiffs having alleged common-law negligence claims that were not subject to an exhaustion requirement, and, accordingly, the judgment was reversed as to the trial court's dismissal on the basis of the plaintiffs' failure to exhaust their administrative remedies, and the case was remanded for further proceedings: although the federal act contains an exhaustion requirement (20 U.S.C. § 1415 (*l*)) that is applicable to civil actions brought under federal laws that protect the rights of disabled children, the plaintiffs' claims were not subject to federal exhaustion requirements because those claims did not allege violations of federal laws protecting the rights of disabled children but, rather, alleged common-law negligence under state law; moreover, although the state legislature implemented the substantive and procedural requirements of the federal act by statute in § 10-76a et seq. and required the exhaustion of administrative remedies under § 10-76h for state law claims seeking relief for the denial of a free appropriate public education, a claim by claim analysis of the

plaintiffs' complaint revealed that the plaintiffs, in asserting claims of negligence and loss of parental consortium, did not seek relief for the denial of education services but, rather, for an alleged regression in the children's symptoms of autism spectrum disorder and an inability to communicate effectively resulting from the time that the children spent under the care of unqualified personnel, and, accordingly, the plaintiffs' claims did not trigger the exhaustion requirement of § 10-76h; furthermore, this court relied on the framework set forth in the United States Supreme Court's recent decision in *Fry* v. *Napoleon Community Schools* (137 S. Ct. 743), in determining that, because the plaintiffs' negligence claims could have been brought outside the school setting, and because the history of the proceedings prior to the filing of their complaint demonstrated that the plaintiffs never invoked the formal procedures of filing a due process complaint or requested a hearing, the plaintiffs sought relief for something other than the denial of a free appropriate public education.

2. The board and board members could not prevail on their claim, as an alternative ground for upholding the dismissal of the plaintiffs' action, that they were entitled to sovereign immunity because they were acting as agents of the state in providing special education services, and, accordingly, this court upheld the trial court's denial of the motion to dismiss on the basis of sovereign immunity: although a local board of education acts as an agent of the state when it is fulfilling the statutory duties imposed on it by the legislature pursuant to the state constitutional (art. VIII, § 1) mandate of free public education and, thus, when it is carrying out the educational interests of the state, a local board of education acts as an agent of a municipality in its function of maintaining control over the public schools within the municipality's limits, and when a board of education acts on behalf of a municipality rather than the state, sovereign immunity is not implicated; in the present case, this court, upon reviewing the statutes (§§ 10-240 and 10-241) delegating control of the public schools to municipalities, concluded that a private lawsuit, such as the plaintiffs' action, alleging a violation of the duties within a municipality's control, does not constitute a serious interference with the performance of the state's functions or its control over its respective instrumentalities, funds and property, and, because the plaintiffs did not allege that the board and board members failed to develop or design a special education program in accordance with state mandates but claimed that their alleged injuries occurred in the execution of such a program, the municipality, rather than the state, was subject to liability, and, accordingly, sovereign immunity was not implicated.

Argued September 16, 2019—officially released February 4, 2020

*Procedural History*

Action to recover damages for, inter alia, personal injuries sustained by the plaintiffs' minor children, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendant Spectrum Kids, LLC, was defaulted for failure to appear; thereafter, the trial court, *Povodator, J.*, granted the motion to dismiss filed by the named defendant et al.; subsequently, the court granted the motions for reargument filed by the plaintiffs and the defendant city of Norwalk and rendered judgment for the named defendant et al., from which the plaintiffs appealed. *Reversed in part*; *further proceedings*.

*Angelo A. Ziotas*, with whom was *Jennifer B. Goldstein*, for the appellants (plaintiffs).

*Tadhg Dooley*, with whom was *Aaron S. Bayer*, for the appellees (named defendant et al.).

*Opinion*

D'AURIA, J. The plaintiffs,[1] the parents of four school-age children, individually and on behalf of their children, brought this action against the Board of Education of the City of Norwalk (board) and three of its members,[2] in their official capacities (board defendants), the city of Norwalk (city), and Spectrum Kids, LLC, and its owner, Stacy Lore.[3] On appeal, we are asked to determine whether the claims alleged in the plaintiffs' complaint seek relief for a failure to provide special education services under the Individuals with Disabilities Education Act (act), 20 U.S.C. § 1400 et seq., thus triggering an administrative exhaustion requirement contained in that act and within General Statutes § 10-76h, or whether the plaintiffs' action seeks relief for something other than the provision of a free appropriate public education (FAPE), thereby relieving the plaintiffs of the exhaustion requirement. To decide this issue at this stage in the litigation—on review of the trial court's decision to grant the board defendants' motion to dismiss for lack of subject matter jurisdiction on the basis of a failure to exhaust administrative remedies—we must confine our inquiry to the allegations in the plaintiffs' complaint.[4] On the basis of those allegations, we conclude that the plaintiffs seek relief for something other than the denial of a FAPE and were, therefore, not obligated to exhaust their administrative remedies. Accordingly, we agree with the plaintiffs that the trial court improperly dismissed their action on the ground that the plaintiffs had not exhausted their administrative remedies. As an alternative ground for upholding the granting of the motion to dismiss, the defendants ask us to determine that the board defendants acted as agents of the state in providing special education services, therefore entitling them to sovereign immunity. We agree with the trial court that the board defendants were acting under the control of, and as an agent of, the municipality rather than the state, and were not entitled to sovereign immunity. Accordingly, we uphold the trial court's denial of the board defendants' motion to dismiss on the sovereign immunity ground.

I

The following facts, as alleged in the plaintiffs' complaint, and procedural history are relevant to our review of these claims. The board and the city hired Lore and Spectrum Kids, LLC, "to provide autism related services to children in the school district with an autism or related diagnosis." Lore represented at the time she was hired that she had received various master's degrees and was a board certified behavior analyst. None of the defendants ever performed a background check on Lore or confirmed her alleged credentials. We note that, in a criminal action, Lore was charged with larceny, to which she pleaded guilty and was sentenced to three years in prison and five years of probation.

See *State* v. *Lore*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CR-10-0125486-T (September 2, 2010).

The four minor plaintiffs were pupils enrolled in the Norwalk public schools and had been diagnosed with autism spectrum disorder. The plaintiffs alleged that between November, 2007, and May, 2008, Lore and Spectrum Kids, LLC, were retained to provide the minor plaintiffs with autism related services within the Norwalk public schools. The plaintiffs brought state law claims against the board defendants, the city, Lore, and Spectrum Kids, LLC, in connection with the hiring of Lore and Spectrum Kids, LLC, and the services, or lack thereof, that were provided. The complaint consists of eighty-four counts. As to the board defendants, in counts one through sixty, the plaintiff parents allege that the board defendants' negligent and careless hiring and supervision of Lore proximately caused permanent and ongoing injuries and losses to their four children and to them individually as parents.[5]

The board defendants moved to dismiss counts one through sixty of the plaintiffs' complaint on the ground that the plaintiffs' failure to exhaust their administrative remedies deprived the trial court of subject matter jurisdiction. In the alternative, the board defendants claimed that the doctrine of sovereign immunity mandated the dismissal of the claims. The trial court granted the motion to dismiss on the ground that the plaintiffs had failed to exhaust their administrative remedies. The trial court denied the board defendants' motion to dismiss as to their claim that sovereign immunity barred the plaintiffs' action. The plaintiffs and the city filed motions to reargue. The trial court allowed the parties to present additional arguments and held a hearing but denied the parties relief in the form of a modification of the court's previous decision. The plaintiffs then timely appealed to the Appellate Court. The appeal was transferred to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

On appeal, the plaintiffs claim that they did not have to exhaust administrative remedies because their complaint advances a state law claim that does not allege a violation of the act. They further allege that they do not seek relief for the denial of a FAPE but, rather, assert common-law claims of negligent hiring and supervision, loss of consortium and negligent infliction of emotional distress—all falling outside the exhaustion requirements contained in the act. The board defendants contend that, although, on the face of the complaint, the plaintiffs do not allege a violation of the act, the complaint in fact seeks relief for the denial of a FAPE. They further contend that, regardless of whether the plaintiffs' complaint alleges a violation of the act or some other common-law claim, the act *and* state law mandate the exhaustion of administrative remedies

prior to the filing of a complaint, as long as the crux of the complaint is the denial of a FAPE. Alternatively, they contend that this court should affirm the trial court's judgment on the ground that the board defendants are entitled to sovereign immunity as agents of the state.

Applicable to both the exhaustion analysis and the sovereign immunity analysis is our standard of review for a court's decision on a motion to dismiss and principles of statutory interpretation. Our review of the trial court's determination of a jurisdictional question raised by a pretrial motion to dismiss is de novo. *State* v. *Samuel M.*, 323 Conn. 785, 794–95, 151 A.3d 815 (2016). "In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Metcalf* v. *Fitzgerald*, 333 Conn. 1, 7, 214 A.3d 361 (2019), cert. denied, 88 U.S.L.W. 3222 (U.S. January 13, 2020) (No. 19-490). To the extent that we are called upon to engage in statutory interpretation, our review is plenary and guided by General Statutes § 1-2z. See, e.g., *Gonzalez* v. *O & G Industries, Inc.*, 322 Conn. 291, 302–303, 140 A.3d 950 (2016).[6]

## II

To reach the question of whether the plaintiffs were required to exhaust their administrative remedies, we first must determine whether the act's exhaustion requirement applies to state law claims, not brought under the act, that allege a violation of a FAPE. In the event that the act's exhaustion requirement does not apply to state law claims, we must then determine whether state law, like the act, mandates exhaustion prior to filing a claim in Superior Court seeking relief for the denial of a FAPE. Finally, if the state statutory scheme does require exhaustion, we must examine the plaintiffs' complaint to determine whether the complaint in fact alleges the denial of a FAPE, which is subject to exhaustion, or some other claim that is not subject to exhaustion.

The act is a federal statute that "ensures that children with disabilities receive needed special education services." *Fry* v. *Napoleon Community Schools*,      U.S.     , 137 S. Ct. 743, 748, 197 L. Ed. 2d 46 (2017); see also 20 U.S.C. § 1400 (d) (2012). "The [act] offers federal funds to [s]tates in exchange for a commitment: to furnish a 'free appropriate public education' [FAPE] . . . to all children with certain physical or intellectual disabilities." *Fry* v. *Napoleon Community Schools*, supra, 748. Once a state accepts the act's financial assistance, eligible children acquire a " 'substantive right' "

to a FAPE. Id., 749. The primary vehicle for providing each eligible child with a FAPE takes the form of an individualized special education plan. 20 U.S.C. § 1414 (d) (2012); *Fry* v. *Napoleon Community Schools*, supra, 749.

Disputes often arise over whether the special education services provided to children with physical or intellectual disabilities are sufficient to satisfy a child's individual education plan. To resolve these disputes, the act requires state or local agencies to establish and maintain procedures to "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415 (a) (2012); see *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 748. "[A] dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state education agency (as state law provides)." *Fry* v. *Napoleon Community Schools*, supra, 749; see 20 U.S.C. § 1415 (b) (6) (2012).

The act also contains an exhaustion requirement pursuant to which individuals cannot file a civil action under the act until they have satisfied the procedural dispute resolution mechanism established by the relevant state agency. See 20 U.S.C. § 1415 (*l*) (2012). In relevant part, the statute provides: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973 . . . or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures . . . shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415 (*l*) (2012).

The plain language of the act provides that exhaustion is required when a civil action is brought "*under such laws* . . . ." (Emphasis added.) 20 U.S.C. § 1415 (*l*) (2012). "[S]uch laws" plainly encompass the federal protections of the rights of children with disabilities embodied in the United States "Constitution, the Americans with Disabilities Act of 1990 . . . title V of the Rehabilitation Act of 1973," and the act itself. 20 U.S.C. § 1415 (*l*) (2012); accord *Moore* v. *Kansas City Public Schools*, 828 F.3d 687, 693 (8th Cir. 2016). The plaintiffs, however, did not bring a civil action "under such laws." Nowhere in their complaint do they allege violations of the constitution or the act or any other federal statute that protects the rights of children with disabilities. The complaint alleges state common-law negligence claims. We agree with the plaintiffs that their claims, on their face, are not subject to the federal exhaustion require-

ments because their claims do not allege violations of federal laws protecting the rights of children with disabilities—the claims do not fall "under such laws."

Despite the language of 20 U.S.C. § 1415 (*l*), the board defendants, in their motion to dismiss before the trial court, argued that, because states are required under the act to establish their own procedural mechanism to resolve disputes, the exhaustion requirement is triggered for *state* law claims that seek relief for the denial of a FAPE, even when the claims do not purport to be brought under the act. The trial court's memorandum of decision does not address whether state law claims trigger an exhaustion requirement under state law. On appeal, the board defendants do not argue, as they did before the trial court, that the claims triggered an exhaustion requirement under state statutes. Rather, they cite exclusively to the federal administrative exhaustion section under the act. See 20 U.S.C. § 1415 (*l*) (2012). We, however, find it necessary to determine whether state law mandates exhaustion of administrative remedies when the claim seeks relief for the denial of a FAPE. To answer this question, we look to the procedural mechanisms established by our state legislature to provide special education services to children. Doing so, we conclude that our state legislature created an exhaustion requirement for state law claims that seek relief for the denial of a FAPE. See General Statutes § 10-76a et seq.

Connecticut implements the substantive and procedural requirements of the act through § 10-76a et seq. The specific procedures for resolving disputes are set forth in § 10-76h. Under § 10-76h (a) (1), a parent of a child requiring special education and related services "may request a hearing of the local or regional board of education or the unified school district responsible for providing such services whenever such board or district proposes or refuses to initiate or change the identification, evaluation or educational placement of or provision of a free appropriate public education to such child or pupil." The request must be made in writing, contain a statement of the specific issues in dispute, and be requested within two years of the board's proposal or refusal to initiate a change in the child's education plan. General Statutes § 10-76h (a) (1) through (4).

Upon receipt of the written request, "the Department of Education shall appoint an impartial hearing officer who shall schedule a hearing . . . pursuant to the Individuals with Disabilities Education Act . . . ." General Statutes § 10-76h (b). Section 10-76h requires the Department of Education to provide training to hearing officers, delineates who may act as hearing officers and members of hearing boards, identifies the parties that shall participate in a prehearing conference to attempt to resolve the dispute, and describes the authority that the hearing officer or board of education shall have.

See General Statutes § 10-76h (c) and (d). Section 10-76h also establishes the processes for appealing from decisions of the hearing officer or the board of education. Section 10-76h (d) (4) provides in relevant part: "Appeals from the decision of the hearing officer or board shall be taken in the manner set forth in section 4-183 . . . ."[7] A plain reading of General Statutes § 4-183 of the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., informs us that, prior to bringing a claim in Superior Court, individuals must exhaust all administrative remedies available within the relevant agency.

Additionally, the extensive administrative scheme established by the legislature supports our conclusion that parties asserting a state law claim and seeking relief for the denial of a FAPE must first exhaust administrative remedies pursuant to § 10-76h. "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 208, 105 A.3d 210 (2014). The exhaustion requirement "serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities. . . . There are two ways to determine whether an administrative remedy has been exhausted. [When] a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure. . . . When, however, a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application of the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Internal quotation marks omitted.) Id. On the basis of the statute's clear and unambiguous language, as well as the established and extensive administrative scheme, we conclude that the plaintiffs must exhaust administrative remedies before filing a claim for the denial of a FAPE under state law.

In reaching this conclusion, we arrive at the final inquiry—whether the plaintiffs in this case in fact seek relief for the denial of a FAPE, thereby triggering the state law exhaustion requirement, or whether they were not required to exhaust administrative remedies because they seek relief for some other kind of action. The board defendants contend that the crux of the plaintiffs' complaint is the denial of a FAPE and that exhaustion is, therefore, required. The plaintiffs contend that they do not claim the denial of a FAPE. They

characterize the complaint as a "common-law claim for negligent hiring, not a claim that 'charges, and seeks relief for,' the denial of a FAPE under the [act]."

We agree with other courts that have addressed this issue that the analysis should proceed claim by claim. We must look to the essence, or the crux, of each of the plaintiffs' claims within the complaint to evaluate whether each claim seeks relief for the denial of a FAPE. See, e.g., *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 755; *Doucette* v. *Georgetown Public Schools*, 936 F.3d 16, 24 (1st Cir. 2019); *Wellman* v. *Butler Area School District*, 877 F.3d 125, 132–33 (3d Cir. 2017). Performing this claim by claim analysis helps ensure that claims that involve the same parties or events as a dispute over the denial of a FAPE, but do not actually involve the denial of a FAPE, do not get "swept up and forced into administrative proceedings with claims that are seeking redress for a school's failure to provide a FAPE . . . ." *Doucette* v. *Georgetown Public Schools*, supra, 26.

Our claim by claim analysis begins with our review of the allegations in the plaintiffs' complaint.[8] Count one of the complaint sets forth a negligence claim brought on behalf of the minor plaintiff, Nathan T. Graham, against a board employee, the defendant Janie R. Friedlander. It alleges that Friedlander never performed a background check on Lore, never confirmed Lore's credentials, should have known of Lore's inability to provide adequate services, and failed to follow protocol in confirming Lore's background and credentials but nevertheless hired Lore. Lore then provided inadequate autism related services to Nathan Graham. The complaint alleges that, by failing to confirm Lore's credentials and failing to adequately supervise the services provided, Friedlander allowed Nathan Graham to be put in "harm's way . . . ." Count one further alleges that, "[a]s a direct and proximate result of the negligence and carelessness of" Friedlander, Nathan Graham suffered injuries. Those injuries include a "regression of the progress made to alleviate the symptoms of [autism spectrum disorder] . . . [l]ack of progress in the symptoms of [autism spectrum disorder, and an] [i]nability to communicate effectively."

Counts two and four incorporate the same facts and allege a claim for loss of parental consortium on behalf of Kimberly H. Graham and Erik J. Graham, the parents of Nathan Graham, claiming injuries in the form of loss of affection, care, and companionship of their son. Counts three and five incorporate the same facts and allege a claim for negligent infliction of emotional distress, also on behalf of Kimberly Graham and Erik Graham, claiming injury in the form of anxiety and emotional distress. Counts six through sixty repeat the same facts, claims, and injuries as to each of the other minor plaintiffs and their parents as against each of the three

board defendants.

The counts brought on behalf of the children are the operative claims of this dispute. If the claims on their behalf for negligent hiring and negligent supervision are dismissed, the claims by the parents for loss of consortium and emotional distress must necessarily fall as well because they are derivative of the injured parties' causes of action. See, e.g., *Jacoby* v. *Brinckerhoff*, 250 Conn. 86, 91–92, 735 A.2d 347 (1999); id. ("an action for loss of consortium, although independent in form, is derivative of the injured spouse's cause of action" (internal quotation marks omitted)); see also *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 520, 838 A.2d 993 (2004) ("bystander emotional distress, like loss of consortium, is a [third-party] cause of action . . . [and] [t]herefore . . . a form of [third-party] liability" (internal quotation marks omitted)). Without a viable claim of injury to the children, the parents will be unable to establish the foundation for their claims, which are premised on the injuries suffered by their children. To decide whether the counts brought by the plaintiff parents on behalf of the plaintiff children against each of the board defendants survive a motion to dismiss for failure to exhaust administrative remedies, we must determine whether they are claims that seek relief for the denial of a FAPE, or whether they seek relief for a claim that does not trigger an exhaustion requirement.

To make this determination, we look to the recent decision of the United States Supreme Court in *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 743, for guidance in determining what types of allegations should be construed as claims for the denial of a FAPE, even if the plaintiff, through artful pleading, does not allege the denial of a FAPE in the complaint. In *Fry*, the plaintiff parents alleged that their daughter's school district discriminated against her in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq., when it refused to permit her to bring her service dog to school. *Fry* v. *Napoleon Community Schools*, supra, 751–52. The plaintiffs filed suit in United States District Court, and the defendant school district moved to dismiss the action. Id., 746. The District Court granted the motion to dismiss, and the United States Court of Appeals for the Sixth Circuit affirmed, holding that § 1415 (*l*) of the act "required the [plaintiffs] to first exhaust the [act's] administrative procedures." Id., 752.

The Supreme Court vacated the judgment of the Sixth Circuit and remanded the case to that court to determine whether the gravamen of the action was the denial of a FAPE, "even though that does not appear on the face of [the] complaint." Id., 758. The Supreme Court specifically stated that it had granted certiorari in *Fry*

to "address confusion in the courts of appeals as to the scope of § 1415 (*l*)'s exhaustion requirement." Id., 752. To determine whether the gravamen of the complaint concerns the denial of a FAPE, the court established a framework for analyzing claims involving special education services. Id., 756–57. Justice Kagan, writing for the majority, directed courts to consider two factors. Id. The first factor requires consideration of whether the claim could have been brought outside the school setting. Id., 756. The second factor requires consideration of the history of the proceedings prior to the filing of the complaint. Id., 757.

The first factor—whether the claim could have been brought outside the school setting—can be evaluated in the form of two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" (Emphasis in original.) Id., 756. If the answer to both questions is yes, then it is unlikely that the complaint is about the denial of a FAPE. Id.

The court provided one illustrative example: "[S]uppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the [act]." Id., 756 n.9. The plaintiff's claim under this hypothetical would be unlikely to require exhaustion; id., 756–57 n.9; even though "the suit could be said to relate, in both genesis and effect, to the child's education." Id., 756. The crux of the complaint would not "concern the appropriateness of an educational program." Id., 757 n.9. Rather, a child could file the same action against an official at another public facility for abuse, and an adult could file a similar action for abuse by a school official. Id.

An exercise in hypotheticals relevant to the facts of this case yields not so unusual scenarios in which a child or an adult with special needs could bring a negligent hiring claim. First, the plaintiffs could have brought essentially the same claim if they attended a municipal summer camp that touted a unique special needs program focused on speech, social skills, occupational therapy, and physical therapy, yet that was run by uncertified and unqualified staff. If the children suffered a regression in development and an inability to communicate—the injuries alleged in the present case—they could claim that the negligent hiring of the camp staff proximately caused those injuries. Second, an adult participating in a municipally funded behavioral therapy treatment program offered in the evenings at a school could also bring the same claim for regression resulting from services provided by an uncertified and unqualified behavior therapist. A negligent hiring action could follow, which would not require as a precondition the

exhaustion of administrative remedies.

These hypotheticals help to illustrate that the crux of the plaintiffs' complaint is not the denial of educational services as in a case in which, for example, a teacher failed to provide the proscribed daily thirty minutes of mathematics instruction. The crux of the complaint is an alleged regression regarding the symptoms of autism spectrum disorder and an inability to communicate effectively caused by the time the children spent under the care of an uncertified and unqualified behavior analyst. The distinction is subtle and requires our acceptance of the allegation that an uncertified behavior therapist can cause injury to individuals diagnosed with autism spectrum disorder in the form of regression. We do not hesitate to construe the allegations in the light most favorable to the plaintiffs and accept those allegations, given that our task in this appeal is to review the trial court's granting of the board defendants' motion to dismiss.

The board defendants disagree and contend that the plaintiffs could not have brought essentially the same claim at another public facility, "seeking to hold a library or theater responsible for their lack of educational progress due to negligent hiring and supervision of a librarian or a theater director." In our view, the board defendants read the hypothetical questions posed in *Fry* too narrowly. The court instructed us to inquire whether the same claim could have been brought if the "alleged conduct had occurred at *a public facility* that was *not* a school—say, a public theater or library . . . ." (Emphasis altered.) *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 756. We do not read *Fry* to confine our examination of the first factor to *exclusively* public theaters and libraries. The court, by stating, "say, a public theater or library," plainly intended to offer examples of public facilities, not to propose an exclusive list. Additionally, the complaint, viewed in the light most favorable to the pleader, alleges negligent hiring, not lack of educational progress. We answer yes to both of the hypothetical questions—a plaintiff could have brought a negligent hiring claim outside the school setting, and an adult at a school could have pressed essentially the same grievance. We view the allegations in the complaint similar to the abuse example in *Fry*. Rather than alleging a claim for abuse, the plaintiffs here have alleged negligent hiring resulting in injury. That claim falls much closer to an abuse claim than the contrasting example in *Fry* of a failure to provide remedial tutoring in mathematics— a clear example of a claim seeking relief for the denial of a FAPE. See id., 757.

Our research confirms that appellate courts acknowledge that state law claims for assault or battery are clear examples of claims seeking relief for something other than the denial of a FAPE. See, e.g., id., 756–57

n.9; *Wellman* v. *Butler Area School District*, supra, 877 F.3d 132. For example, the United States Court of Appeals for the Third Circuit has described a possible scenario in which a student brings a claim challenging the sufficiency of her individualized education plan but who also happened to be physically assaulted on the bus to school. See *Wellman* v. *Butler Area School District*, supra, 132–33. Although the plaintiff may choose to bring her claims in a single complaint, the claim for relief for physical injuries "has nothing to do with her access to a FAPE and relief [under the act]." Id., 133. "Surely the [*Fry*] [c]ourt would not have envisioned that such a claim would be subject to the [act's] procedural requirements, nor would subjecting such a claim to these procedural requirements necessarily result in any benefit to either the parties or court reviewing the matter at a later date." Id.

This case presents a more difficult scenario than the clear demarcation that an assault claim is generally quite distinct from a claim seeking relief for the denial of a FAPE. The plaintiffs liken their claims to the assault example in *Fry*, alleging that the thrust of the claims is that the negligent hiring of Lore resulted in injuries to the children and their parents. The board defendants, on the other hand, urge us to focus on the nature of the injury alleged by the plaintiffs. The board defendants state that "the crux of [the] plaintiffs' complaint is that they received inadequate special education services as a result of [the] defendants' negligence in hiring an unqualified individual who was [unable] to provide adequate services . . . and that, as a result, they failed to make education progress." (Citation omitted; internal quotation marks omitted.) By focusing on the phrase, "received inadequate special education services," the board defendants view the complaint as one seeking relief for inadequate education—the denial of a FAPE.

We decline to read the plaintiffs' complaint against the board defendants so narrowly or to focus exclusively on the alleged inadequate services. The plaintiffs alleged several ways in which the negligence and carelessness of the board defendants "proximately caused" injuries to the parents and their children. Rather than parsing out a specific phrase, we quote the entire paragraph of the complaint that alleges the plaintiffs' injuries and losses:

"16. The injuries and losses suffered by the [plaintiffs] . . . were proximately caused by the negligence and carelessness of the [defendants] . . . in one or more of the following ways, in that:

"a. [The defendants] failed to confirm the credentials of . . . Lore;

"b. [The defendants] failed to perform a background check on . . . Lore and/or any of the employees of Spectrum Kids, LLC, as required by [General Statutes]

§ 10-221d;

"c. [The defendants] failed to adequately supervise the services provide[d] by . . . Lore and/or any of the employees of Spectrum Kids, LLC;

"d. [The defendants] allowed [the plaintiffs] to be put in harm's way;

"e. [The defendants] knew or should have known of . . . Lore's inability to provide adequate services at the time of her hire;

"f. [The defendants] knew or should have known of . . . Lore's inability to provide adequate services at some point shortly after hiring her; [and]

"g. [The defendants] failed to follow standard protocol in confirming . . . Lore's background and credentials."

We read this paragraph to set forth the causation elements for negligent hiring and negligent supervision claims. The plaintiffs did not allege an injury in the form of inadequate education services. Rather, they alleged negligence against the board defendants because the board defendants *should have known* of Lore's inability to provide adequate services.

The paragraph that follows directly sets forth the injuries that the plaintiffs allegedly suffered:

"17. As a direct and proximate result of the negligence and carelessness of the [defendants], [the plaintiffs] suffered the following injuries:

"a. A regression of the progress made to alleviate the symptoms of [autistic spectrum disorder].

"b. Lack of progress in the symptoms of [autism spectrum disorder].

"c. Inability to communicate effectively."

Viewing the complaint in the light most favorable to the plaintiffs, we read the complaint to allege that the board defendants negligently hired Lore, that the board defendants should have known of Lore's inability to provide services, and that Lore's failure to provide services directly and proximately caused injury to the children in the form of a regression unique to children suffering from autism spectrum disorder and an inability to communicate effectively. Viewed in this most favorable light, the claim sets forth an allegation for negligent hiring, not the denial of a FAPE, and thus is not subject to dismissal for failure to exhaust administrative remedies. The fact that the plaintiffs used the words, "inability to provide adequate services," does not automatically transform the claim into one alleging the denial of a FAPE or automatically subject the claim to an exhaustion requirement. The court in *Fry* warned against this kind of " 'magic words' " approach. *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 755.

"The use (or [nonuse]) of particular labels and terms is not what matters." Id. What matters is the substance of the complaint. See id.

Moreover, the fact that the one kind of harm caused may also be the kind of harm caused in a case involving the denial of a FAPE does not mean that this kind of harm cannot be caused by other actions. If a teacher hits a special education student over the head and the student misses school for two weeks due to a concussion, the child could still bring an assault claim against the teacher even though one of the harms alleged in the complaint could be that the child did not receive special education services for two weeks while recovering from the injury. The mere acknowledgement that the child received inadequate services for two weeks would not make the claim one for the denial of a FAPE. The claim would remain one for assault. Likewise, in the present case, the plaintiffs allege in their complaint that the children suffered injuries similar to the kind of injuries a child would suffer from an assault. They allege that, because Lore had no credentials to provide special education services, the children under her instruction, suffering from autism spectrum disorder, were injured in permanent and unique ways—specific to children suffering from the disorder. The fact that the children also missed some hours of educational instruction does not supersede the injuries allegedly suffered and make the claim one for the denial of a FAPE.

We are further persuaded that the complaint does not seek *relief* for the denial of a FAPE on the basis of the absence of any mention of the act, other laws protecting children with disabilities, or the children's education plans. The board defendants, in their memorandum of law in support of their motion to dismiss before the trial court, admitted as much in the section that contends that they enjoy sovereign immunity, stating that "this court lacks subject matter jurisdiction to entertain the plaintiffs' *common-law claims* against them." (Emphasis added.) Similarly, in the sovereign immunity section of their brief to this court, the board defendants conceded that, "in addition to [implicating the duty to provide a FAPE] . . . this case concerns alleged breaches of specific *state mandated duties concerning hiring*." (Emphasis added.) The board defendants ask us to cast the complaint as one seeking relief for the denial of a FAPE for the purpose of an exhaustion requirement but then to view the complaint as alleging a violation of common-law and state mandated duties—not the denial of a FAPE—for the purposes of sovereign immunity. We decline to do so.

Finally, we look to the second *Fry* factor—the history of the proceedings—to determine whether the plaintiffs' complaint alleges the denial of a FAPE. See *Fry* v. *Napoleon Community Schools*, supra, 137 S. Ct. 757.

A plaintiff who previously has invoked the act's formal procedures to handle the dispute could suggest that relief is indeed being sought for the denial of a FAPE. Id. This inquiry "depends on the facts" because "a court may conclude, for example, that the move to a courtroom came from a [late acquired] awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely." Id.

In the present case, the plaintiffs became dissatisfied with Lore's services and learned that Lore in fact did not possess the degrees or certifications she claimed to have. Then, they participated in multiple planning and placement team meetings to determine whether remedial services were appropriate as well as to receive the hours of service that were not delivered by Lore. The defendants admit that the "[p]laintiffs did not file a due process complaint or otherwise pursue administrative remedies under the [act]." Instead, they filed this lawsuit. The history of these proceedings, specifically, the fact that the plaintiffs never invoked the formal procedures of filing a due process complaint or requesting a hearing, supports our conclusion that the plaintiffs seek relief for something other than the denial of a FAPE.

Considering the factors outlined in *Fry*, we conclude that the plaintiffs allege common-law negligence claims that are not subject to an exhaustion requirement. At this early stage in the litigation, we are not required to determine whether, ultimately, a claim for negligent hiring lies against the defendants. All we hold today is that, for jurisdictional purposes, the plaintiffs do not need to exhaust administrative remedies as to the claims they allege for a determination of whether they state a claim on which relief can be granted. We reverse the judgment of the trial court on that ground.[9]

### III

The board defendants contend alternatively that, even if the plaintiffs were not required to exhaust their administrative remedies prior to filing their state law claims, this court should uphold the dismissal of the complaint on the ground that the board defendants are entitled to sovereign immunity. In their motion to dismiss, the board defendants claimed that their actions fell within the doctrine of sovereign immunity because they acted as agents of the state in carrying out a state mandated function. The trial court denied the motion to dismiss as to the claim of sovereign immunity. We agree with the trial court that, on the basis of the board members' actions as alleged in the plaintiffs' complaint, the board defendants are not entitled to sovereign immunity.[10]

"Sovereign immunity relates to a court's subject matter jurisdiction over a case, and therefore presents a question of law over which we exercise de novo

review." (Internal quotation marks omitted.) *Columbia Air Services, Inc.* v. *Dept. of Transportation*, 293 Conn. 342, 349, 977 A.2d 636 (2009). "The principle that the state cannot be sued without its consent, sovereign immunity, is well established under our case law." (Internal quotation marks omitted.) *Housatonic Railroad Co.* v. *Commissioner of Revenue Services*, 301 Conn. 268, 274, 21 A.3d 759 (2011). Not as well established are the circumstances under which a municipality, cloaked with the state's sovereign immunity, is "protect[ed] against suit as well as liability—in effect, against having to litigate at all." (Internal quotation marks omitted.) *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 42, 213 A.3d 1110 (2019).

The modern rationale for sovereign immunity rests on the practical ground that subjecting "the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property." (Internal quotation marks omitted.) Id. The legislature has the power to limit or extend the scope of the state's immunity from suit. The legislature can *waive* immunity and consent to suit, thereby limiting the state's immunity. Compare *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 176, 9 A.3d 326 (2010) (discussing statutory waiver of sovereign immunity under General Statutes § 4-61), with *Hicks* v. *State*, 297 Conn. 798, 805, 1 A.3d 39 (2010) (concluding that General Statutes § 52-556 does not waive sovereign immunity with regard to postjudgment interest pursuant to General Statutes § 37-3b). Alternatively, the legislature can *extend* sovereign immunity to local agents or actors functioning on behalf of the state. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 51 (concluding that legislature extended sovereign immunity state enjoys to local actors of political subdivisions under General Statutes § 28-13). The present case concerns the *extension* of sovereign immunity. Specifically, this case addresses whether the legislature extended the state's immunity from suit to the board defendants for the kind of relief that the plaintiffs seek.

The state's deeply rooted interest in its public schools stems from article eighth, § 1, of the Connecticut constitution, which provides: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." To provide the children of Connecticut with public education, the legislature balances two important tasks, a dichotomy of interests. On the one hand, the state must enable agents to act on its behalf to perform state functions. On the other hand, the state must delegate important duties to the control of the municipalities so that private litigation does not interfere with the running of the state's affairs.

"There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, § 1." *Cheshire* v. *McKenney*, 182 Conn. 253, 258, 438 A.2d 88 (1980). "In discharging its state constitutional mandate to provide free public primary and secondary education . . . the state has delegated the duty to educate a municipality's children to local boards of education." (Citation omitted; footnote omitted.) *Board of Education* v. *New Haven*, 237 Conn. 169, 174–75, 676 A.2d 375 (1996); see id. (citing General Statutes § 10-220). We previously have described local boards of education as "agenc[ies] of the state in charge of education in the town" with "broad powers" granted to them by the legislature. *Fowler* v. *Enfield*, 138 Conn. 521, 530, 86 A.2d 662 (1952).

For example, in *Board of Education* v. *Ellington*, 151 Conn. 1, 9–10, 193 A.2d 466 (1963), we explained that the legislature granted boards of education the power to expend money to meet the requirements of state law pursuant to § 10-220. In *Cheney* v. *Strasburger*, 168 Conn. 135, 140–41, 357 A.2d 905 (1975), we determined that boards of education have the power of eminent domain when acting as agents of the state to carry out the state's educational interests. "It is basic that a town board of education is an agent of the state when carrying out the educational interests of the state." Id., 141.

On the other hand, "the state has delegated to the *municipalities* other duties related to its educational obligation." (Emphasis added.) *Board of Education* v. *New Haven*, supra, 237 Conn. 175; see id. (citing General Statutes § 10-241). "Local boards of education act on behalf of the municipality, then, in their function of maintaining control over the public schools within the municipality's limits." *Cheshire* v. *McKenney*, supra, 182 Conn. 258–59.

This dichotomy—boards of education acting as agents of the state at some times but acting as agents of the municipality at others—has resulted in the often quoted language: "Town boards of education, although . . . agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities." *Cahill* v. *Board of Education*, 187 Conn. 94, 101, 444 A.2d 907 (1982). The question of whether the board is acting as an agent of the state or of the town becomes determinative of whether the board is entitled to sovereign immunity because a suit against an agent of the state acting on behalf of the state is, in effect, a suit against the sovereign state. See *Horton* v. *Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977). When a board of education acts on behalf of a municipality, however, the suit is one against an agent of the municipality, implicating perhaps governmental immunity, but not sovereign immunity.

The test to determine whether a board of education is acting as an agent of the state and, thus, is entitled to sovereign immunity was first expressly stated in *Cahill* v. *Board of Education*, supra, 187 Conn. 102. In *Cahill*, we reasoned that, if the "action would operate to control the activities of the state or subject it to liability," then the board would be entitled to sovereign immunity. Id. We concluded in *Cahill* that "[a] breach of contract between a local board of education and its employees does not give rise to a conclusion that such an action would operate to control the activities of the state or subject it to liability." Id. We premised that conclusion on the notion that the local community primarily maintains oversight of employment contracts and that any damages resulting from a breach of those contracts would be paid by the community, not the state. Id.

Since *Cahill*, our courts consistently have described the test for whether a board of education is entitled to sovereign immunity as whether the "action would operate to control or interfere with the activities of the state . . . ." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 244 Conn. 101, 112, 708 A.2d 937 (1998), overruled in part on other grounds by *Haynes* v. *Middletown*, 314 Conn. 303, 323, 101 A.3d 249 (2014); accord *Palosz* v. *Greenwich*, 184 Conn. App. 201, 207–208, 194 A.3d 885, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018); *Doe* v. *Board of Education*, Docket No. 3:05-CV-482 (WWE), 2009 WL 369918, *3 (D. Conn. February 11, 2009). In other contexts, we have established different tests that, within that particular field, guide us in determining whether an entity is acting as an agent of the state.[11] Irrespective of the particular test label, we begin by examining the relevant statutes to evaluate whether the legislature intended that the entity would act as an agent of the state. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, supra, 333 Conn. 45.

General Statutes § 10-240 provides: "Each town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and shall have all the powers and duties of school districts, except so far as such powers and duties are inconsistent with the provisions of this chapter." Under this section, the state has delegated control of the public schools to the municipalities. The municipalities, in turn, must carry out those duties through their boards of education. See *Palosz* v. *Greenwich*, supra, 184 Conn. App. 212 (concluding that § 10-240 explicitly delegates control over public schools to local board of education through municipality). "Local boards of education act on behalf of the municipality, then, in their function of maintaining control over the public schools within the municipality's limits." *Cheshire* v. *McKenney*, supra, 182 Conn.

258–59. The members of local boards of education are vested with the powers of their office by municipal action pursuant to municipal elections, the town charter, or appointment by an elected officer or body of the municipality. Id., 259.

This delegation of control to the municipalities is further enforced by § 10-241.[12] Section 10-241 sets forth the powers that the municipalities maintain to carry out their statutory responsibilities regarding school districts. These powers include the authority to purchase and convey real and personal property for school purposes, to build and repair schoolhouses, and to collect taxes, borrow money, employ teachers, and pay their salaries. Importantly, § 10-241 also expressly empowers school districts to sue and permits them to be sued.

Reading these statutes in conjunction, in which the municipality, not the board of education, is directly delegated authority by the state, we are persuaded that a private lawsuit alleging a violation of the duties within the municipality's control would subject the municipality, not the state, to liability. Such a lawsuit would not constitute a serious interference with the performance of the state's functions or with its control over its respective instrumentalities, funds, and property. Rather, the municipality would be responsible for defending against the lawsuit, procuring insurance to cover any damages resulting from the lawsuit, and addressing injunctive relief sought by aggrieved parties—in short, liability.

Our case law supports this interpretation of these statutes. We have stated that "[a] [local] board of education acts as an agent of its respective *municipality* when it performs those functions originally entrusted by the state to the municipality that the municipality has subsequently delegated to the board of education . . . ." (Emphasis added.) *Board of Education* v. *New Haven*, supra, 237 Conn. 181; see also *Purzycki* v. *Fairfield*, supra, 244 Conn. 112 (concluding that board of education was not vested with sovereign immunity because its duty to supervise students is performed for benefit of municipality); *Sansone* v. *Bechtel*, 180 Conn. 96, 100, 429 A.2d 820 (1980) (concluding that members of board of education are agents of state only when carrying out interests of state but its members are town officers).

Most recently, in *Palosz* v. *Greenwich*, supra, 184 Conn. App. 212, the Appellate Court concluded that the defendant board of education acted as an agent of the municipality, not the state, when its employees allegedly failed to comply with an antibullying policy that the board had adopted, resulting in a tragic suicide. Id., 203–204, 214–15. The Appellate Court stated that a board of education "acts as an agent of the municipality when it enforces and complies with . . . [policies] pursuant to its general powers of control over public

schools, which is explicitly delegated to a local board of education through the municipality pursuant to § 10-240." Id., 212. The Appellate Court addressed whether holding the board liable for the allegedly tortious conduct of an employee would operate to control or interfere with the activities of the state. Id. To that question, it answered no. Id. A lawsuit alleging tortious conduct would not operate to control the activities of the state or interfere with its functions because the suit would subject the municipality—not the state—to liability. The trial court in the present case asked a similar question: "The critical/essential claim is that the defendants were negligent in verifying the credentials of someone who was hired to provide special education services—where is the control over state functions when the issue really is a human resource/contract administration type issue?" We are persuaded by the practical reasoning of these courts.

The board defendants try to distinguish *Palosz* by claiming that the plaintiffs in that case alleged a failure to comply with a policy that the defendant board of education itself developed. They claim that, by enacting its own policy, the board in *Palosz* was no longer acting as an agent of the state and, therefore, was not entitled to sovereign immunity, whereas, in the present case, the board defendants were following a state mandate. We disagree. Irrespective of whether a board establishes its own policy, it operates under the control of the municipality. The Appellate Court determined in *Palosz* that the board acts as an agent of the municipality when it enforces and complies with the policy "pursuant to its general powers of control over public schools, which is explicitly delegated to a local board of education through the municipality pursuant to § 10-240." *Palosz* v. *Greenwich*, supra, 184 Conn. App. 212. The key factor is the board's execution of duties under the control of the municipality, not the state. Certainly, the determination of whether a board is entitled to sovereign immunity does not turn on whether the board established its own policy.

The argument that the board defendants make does raise a broader issue worth addressing briefly: whether *any* action that the board takes could be construed as operating to control the activities of the state or to interfere with its functions, thereby entitling the board to assert the state's sovereign immunity.

Even if we assume, without deciding, that certain enumerated board actions, such as the development or design of a policy pursuant to state statute, could operate to control and interfere with the activities of the state, that issue is not before us because nothing in the plaintiffs' complaint alleges violations of the development or design of an education program. See id., 211 (discussing possibility that board's development, implementation, submission, and assessment of policy man-

dated by state statute could be entitled to sovereign immunity because board would be acting as agent of state but not deciding issue because plaintiffs did not claim that defendant failed to comply with those requirements).

The parties disagree about exactly what is the main allegation—the crux—of the plaintiffs' complaint. The board defendants claim that the crux of the complaint is inadequate education. The plaintiffs claim instead that it is the negligent hiring and supervision of Lore. Under either interpretation, the complaint clearly does not allege that the board defendants failed to set up, design, or establish a special education program in accordance with the state mandate. The alleged injury occurred in the execution of the program. A failure in execution subjects the party in control to liability, in this case the municipality, not the state.

The board defendants would have us reach a different conclusion. They contend that the actions of the board members in the present case are unique because they were acting as agents of the state in fulfilling their state and federally mandated duty to provide special education services to students with disabilities pursuant to § 10-76a et seq. Section 10-76a et seq. establishes state procedures to implement the federally funded act. The board defendants argue that the state delegated the authority to hire special education teachers directly to the local board under General Statutes § 10-76d, rather than to the municipality, and thus they acted as agents of the state when hiring teachers. As agents of the state, they contend, they are entitled to sovereign immunity. The board defendants rely on Superior Court cases and a United States District Court case for the proposition that tort claims, including negligent hiring and supervision of special education teachers, "would interfere with [the state mandated] duty to provide special education services." *Doe* v. *Board of Education*, supra, 2009 WL 369918, *3 (concluding that local school board was entitled to sovereign immunity as to claims of negligent hiring and supervision of employees); see also *Milhomme* v. *Levola*, Superior Court, judicial district of Windham at Putnam, Docket No. CV-94-0048326-S (July 14, 1995) (14 Conn. L. Rptr. 517, 518, 521) (school board that provided minor child with transportation to school under state mandated individualized education program was entitled to sovereign immunity in negligence action).

We disagree. Reading the statutes as a harmonious and consistent body of law; see, e.g., *Board of Education* v. *State Board of Education*, 278 Conn. 326, 333, 898 A.2d 170 (2006) (because "legislature is presumed to have created a harmonious and consistent body of law . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction" (internal quotation

marks omitted)); leads us to conclude that, although the legislature enacted laws mandating that boards provide special education, that mandate does not "encroach upon the general powers of control delegated to the towns by § 10-240." *Palosz* v. *Greenwich*, supra, 184 Conn. App. 212. Section 10-76d (b) provides in relevant part: "[E]ach local or regional board of education shall . . . (1) [p]rovide special education for school-age children requiring special education . . . ." Nothing in that statute diminishes or rescinds the power that the state has delegated to the towns, through local boards of education, to control the public schools. Under the special education delegation, the legislature merely supplemented the duties of the local boards to include providing special education programs and services.

With the delegation of control of public education to the municipalities and boards comes significant funding to carry out this obligation along with, we conclude, liability for actions that would not operate to interfere with or control the activities of the state.[13] We see no reason to depart from this construct and create an exception by which human resource actions relating to special education somehow operate to interfere with or control the activities of the state. The legislature did not expressly extend sovereign immunity to boards of education for special education services. The legislature also did not render the general delegation of control to municipalities inapplicable in the case of special education. Without such a directive from the legislature, we decline to conclude that sovereign immunity extends as the board defendants claim. We therefore conclude that the board defendants are not entitled to sovereign immunity. We affirm the judgment of the trial court on that ground.

The judgment is reversed only as to the granting of the board defendants' motion to dismiss on the ground that the plaintiffs failed to exhaust their administrative remedies and the case is remanded with direction to deny the board defendants' motion to dismiss as to the exhaustion claim and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

[1] The plaintiff parents are Kimberly H. Graham, Erik J. Graham, Krishna Thiruvengadachari, Supraja Rajagopalan, Margaret A. Kozlark, Michael W. Bustell, Maria Murphy, and Patrick Murphy. The plaintiff children are Nathan T. Graham, Vasisht Krishna, Henry J. Bustell, and Brooke Murphy.

[2] The defendant board members are Janie R. Friedlander, Beatrice Krawiecki, and Salvatore Corda.

[3] In the underlying action, Spectrum Kids, LLC, was defaulted for failure to appear. Before the trial court's dismissal of the plaintiffs' action, Lore had filed an appearance but had not filed an answer or other responsive pleading and had not been defaulted for failure to plead. In its memorandum of decision granting the board defendants' motion to dismiss, the trial court thus referred to both Spectrum Kids, LLC, and Lore as "nonparticipating defendants."

The plaintiffs did not direct any claims in their complaint specifically toward the city, although the first count of the complaint, which is incorporated into all of the subsequent counts, alleged that the city is liable for indemnification as a result of the acts and omissions of its employees that

occurred within the scope of their employment, pursuant to General Statutes § 7-465. The trial court dismissed the claim against the city, stating that it was "premised on mootness and lack of a justiciable issue, coupled with untimeliness of the commencement of the action against the city."

In this appeal, the plaintiffs do not challenge the trial court's dismissal of the indemnification claim against the city. Consequently, we address only the claims against the board defendants—counts one through sixty of the complaint.

[4] Because the trial court granted the motion to dismiss as to all of the claims against the city and the board defendants; see footnote 3 of this opinion; this court has jurisdiction to consider the plaintiffs' claims on appeal under Practice Book § 61-3.

[5] Count one of the complaint asserts a claim against the board defendant Janie R. Friedlander on behalf of the minor plaintiff, Nathan T. Graham, alleging negligent hiring and supervision that resulted in injuries, including a regression of the progress made to alleviate the symptoms of autism spectrum disorder, lack of progress in the symptoms of autism spectrum disorder, and an inability to communicate effectively.

Counts two through five incorporate the allegations in count one and assert individual claims by the parents of Nathan Graham as against Friedlander for loss of consortium and negligent infliction of emotional distress.

Counts six through ten repeat the allegations in the first five counts but allege claims against the board defendant Beatrice Krawiecki.

Counts eleven through fifteen repeat the allegations in the first five counts but allege claims against the board defendant Salvatore Corda.

Counts sixteen through thirty, brought by the parents of the minor plaintiff, Vasisht Krishna, individually and on behalf of their child, repeat the allegations and causes of action contained in the first fifteen counts as against each of the three individual board defendants.

Counts thirty-one through forty-five, brought by the parents of the minor plaintiff, Henry J. Bustell, individually and on behalf of their child, repeat the allegations and causes of action in the first fifteen counts as against each of the three board defendants.

Counts forty-six through sixty, brought by the parents of the minor plaintiff, Brooke Murphy, individually and on behalf of their child, repeat the allegations and causes of action in the first fifteen counts as against each of the three board defendants.

[6] "General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Gonzalez* v. *O & G Industries, Inc.*, supra, 322 Conn. 302–303.

[7] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court . . . ."

[8] Count one of the plaintiffs' complaint alleges in relevant part: "14. [The defendants] hired . . . Lore to provide autism related services to individuals in need of those services within the [Norwalk public schools].

"15. None of the defendants ever performed a background check on the defendant . . . Lore, nor did they ever confirm the alleged credentials of . . . Lore.

"16. The injuries and losses suffered by the [plaintiffs] . . . were proximately caused by the negligence and carelessness of the [defendants] . . . in one or more of the following ways, in that:

"a. [The defendants] failed to confirm the credentials of . . . Lore;

"b. [The defendants] failed to perform a background check on . . . Lore and/or any of the employees of Spectrum Kids, LLC, as required by [General Statutes] § 10-221d;

"c. [The defendants] failed to adequately supervise the services provide[d] by . . . Lore and/or any of the employees of Spectrum Kids, LLC;

"d. [The defendants] allowed [the plaintiffs] to be put in harm's way;

"e. [The defendants] knew or should have known of . . . Lore's inability to provide adequate services at the time of her hire;

"f. [The defendants] knew or should have known of . . . Lore's inability to provide adequate services at some point shortly after hiring her;

"g. [The defendants] failed to follow standard protocol in confirming . . .

Lore's background and credentials.

"17. As a direct and proximate result of the negligence and carelessness of the [defendants], [the plaintiffs] suffered the following injuries:

"a. A regression of the progress made to alleviate the symptoms of [autistic spectrum disorder].

"b. Lack of progress in the symptoms of [autism spectrum disorder].

"c. Inability to communicate effectively.

"18. As a further result of the negligence and carelessness of the [defendants], [the plaintiffs'] injuries are permanent in nature and may require additional care in the future.

"19. As a further result of the negligence and carelessness of the defendant[s], [the plaintiffs] [were] required to spend various sums of money for additional treatment and services."

[9] Because we conclude that, when the crux of the complaint is not the denial of a FAPE and the exhaustion requirement is not triggered, we need not reach the question of whether exhaustion would have been excused under the doctrine of futility.

[10] Of course, in certain circumstances, municipalities may enjoy governmental immunity from liability, but that is entirely different from sovereign immunity. See, e.g., *Vejseli* v. *Pasha*, 282 Conn. 561, 573, 923 A.2d 688 (2007). The difference is that sovereign immunity prevents the state from being sued in the first instance, whereas governmental immunity does not protect against suit but could protect against liability. Id. The board has not asserted a governmental immunity defense, and we do not decide that issue.

[11] For example, in determining whether a corporate entity is an " 'arm of the state,' " we have evaluated eight factors, namely, the creation of the entity, the purpose of the entity, its financial dependency on the state, whether its officers are state functionaries, whether the entity is operated by state employees, whether the state has the right to control the entity, whether the entity's budget, expenditures and appropriations are closely monitored by the state, and whether a judgment against the entity would have the same effect as a judgment against the state. *Rocky Hill* v. *SecureCare Realty, LLC*, 315 Conn. 265, 280, 105 A.3d 857 (2015); *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 98–100, 861 A.2d 1160 (2004). We have not been asked by the parties in this case to alter, and see no reason to disturb, the " 'control or interfere' " test for determining whether boards of education enjoy sovereign immunity. *Purzycki* v. *Fairfield*, supra, 244 Conn. 112.

[12] General Statutes § 10-241 provides: "Each school district shall be a body corporate and shall have power to sue and be sued; to purchase, receive, hold and convey real and personal property for school purposes; to build, equip, purchase and rent schoolhouses and make major repairs thereto and to supply them with fuel, furniture and other appendages and accommodations; to establish and maintain schools of different grades; to establish and maintain a school library; to lay taxes and to borrow money for the purposes herein set forth; to make agreements and regulations for the establishing and conducting of schools not inconsistent with the regulations of the town having jurisdiction of the schools in such district; and to employ teachers, in accordance with the provisions of § 10-151, and pay their salaries. When such board appoints a superintendent, such superintendent may, with the approval of such board, employ the teachers."

[13] Expenditures allocated by the state to the Department of Education for the 2019–2020 fiscal year totaled $3,018,224,700. Public Acts 2019, No. 19-117, § 1. That funding then filters to the school districts to, among many other things, provide students with special education services. For example, the Hartford school district spent $120,864,053 on special education services in 2016–2017, comprised of federal, state, and district money. Connecticut State Department of Education, Special Education Expenditures; Percentage of Total Expenditures Used for Special Education, 2016–17 Hartford School District, available at http://edsight.ct.gov/SASStoredProcess/guest?_rpttype=listing&_year=2016-17&_district=Hartford+School+District&_program=%2FCTDOE%2FEdSight%2FRelease%2FReporting%2FPublic%2FReports%2FStoredProcesses%2FSpecialEducationReport&_select=Submit (last visited January 30, 2020).